UNITED STATES, Appellee

v.

Lewis E. JEFFERSON, Sergeant,
U.S. Army, Appellant.

No. 95–0544.
Crim. App. No. 9302034.

U.S. Court of Appeals for
the Armed Forces.

Argued Jan. 30, 1996.

Decided Aug. 29, 1996.

For Appellant: *Captain Mark I. Goodman* (argued); *Colonel Stephen D. Smith, Lieutenant Colonel John T. Rucker, Major Michael L. Waters, Major Fran W. Walterhouse, Captain Victor A. Tall* (on brief).

For Appellee: *Captain Kenneth D. Albert* (argued); Colonel *John M. Smith, Lieutenant Colonel Eva M. Novak, Major Lyle J. Jentzer* (on brief); *Captain Michael E. Mulligan.*

*Opinion of the Court*

CRAWFORD, Judge:

Pursuant to his pleas at a trial at Bad Kreuznach, Germany, on November 9 and 10, 1993, appellant was convicted of driving

while intoxicated (DWI), in violation of Article 111, Uniform Code of Military Justice, 10 USC § 911. Contrary to his pleas, he was convicted of leaving the scene of an accident, committing an indecent act with a minor, committing an indecent act with another, disorderly conduct, and damaging personal property, in violation of Articles 134 and 109, UCMJ, 10 USC § 934 and 909, respectively. The convening authority approved the sentence of a bad-conduct discharge and reduction to the lowest enlisted grade. The Court of Criminal Appeals dismissed the specification alleging leaving the scene of an accident but otherwise affirmed the findings and sentence. We granted review of the following issue:

> WHETHER APPELLANT WAS DENIED A FUNDAMENTALLY FAIR TRIAL BECAUSE THE MILITARY JUDGE LIMITED DEFENSE COUNSEL'S ABILITY TO CONDUCT GROUP *VOIR DIRE* AND DENIED DEFENSE COUNSEL THE OPPORTUNITY TO CONDUCT INDIVIDUAL *VOIR DIRE*.

We also specified the following issues for review:

### I

> WHETHER THE MILITARY JUDGE ERRED IN HOLDING THAT A "REMINDER" OF A PREVIOUS ARTICLE 31 RIGHTS WARNING GIVEN FOUR DAYS BEFORE IS SUFFICIENT TO SATISFY ARTICLE 31 WHEN THE ACCUSED THEN MAKES AN INCULPATORY STATEMENT.

### II

> WHETHER THE MILITARY JUDGE ERRED IN REFUSING INDIVIDUAL *VOIR DIRE* OF CERTAIN MEMBERS AND IN REFUSING TO REOPEN *VOIR DIRE* AT THE REQUEST OF DEFENSE COUNSEL.

We hold that, as to the Granted Issue and Specified Issue II, the judge did not abuse his discretion in limiting defense counsels' group and individual *voir dire* questioning. He did, however, abuse his discretion in not allowing the defense to reopen *voir dire* in order to ask questions of two members concerning their friends or relatives being victims of crimes and the types of crimes involved.

As to Specified Issue I, we hold that the judge did not err in finding new rights' warnings were not needed 4 days after a proper rights' advisement by an agent as to the same subject matter where appellant was aware of his prior rights' advisement.

## GRANTED ISSUE & SPECIFIED ISSUE II

### FACTS

Prior to arraignment, trial counsel informed the judge of a proposed plea of guilty to the DWI offense. However, defense counsel requested that the flyer [1] setting out the Charges and specifications, including the DWI offense, not be given to the members. Before ruling on the flyer, the judge asked defense counsel how trial counsel could ask questions during *voir dire* concerning that offense if it was not on the flyer. Defense counsel said those questions would be irrelevant. The judge disagreed.

Thereafter, waiving any objection to the flyer, defense counsel then informed the judge that he would tell the members about the DWI offense. The defense theory was to plead guilty to DWI because appellant's intoxication would establish that he did not know what he was doing as to the alleged indecent acts with two young female victims.

On appeal the defense arguments on the Granted Issue and Specified Issue II center around two themes: the judge's *limitation on questions* and the *procedures employed* by the judge during *voir dire.*

### LIMITATION ON QUESTIONS

The defense argues that the judge improperly limited questions during *voir dire* as to

---

**1.** The flyer is a plain sheet of paper listing the Charges and specifications without giving the personal data or the preferral/referral data of the charge sheet. It is given to the court members and is included in the record as an appellate exhibit.

burden of proof (Final Brief at 10), members' inelastic attitude towards punishment, and credibility of witnesses. We will examine each in turn.

### Burden of Proof

The defense asked on *voir dire:*

Do any of you have an opinion at this moment that Sergeant Jefferson is guilty of the offenses of which he is charged?

Do any of you have an opinion at this point?

CSM [Command Sergeant Major] BUCHER: You said there was—

MJ: I'm sorry.

DC: I'll reask the question, just in case you may have been confused.

Do any of you have an opinion at this moment, as we sit here right now, as to Sergeant Jefferson's guilt or innocence?

CSM BUCHER: I have an opinion that he's guilty on one charge.

That's what you said; right, sir?

MJ: It's hard to dispute that when I told you he has already pled guilty to it.

DC: Is that what you're referring to?

CSM BUCHER: Yes, sir.

The judge then stated, "The rest of them probably have an opinion that he's not guilty because I told them that they must presume that he's not guilty until the proof is established beyond a reasonable doubt." The defense argues that the military judge acted improperly in interrupting questioning concerning the presumption of innocence. However, trial defense counsel recognized the members' confusion because their next questions were as follows:

In other words, apart from the charge to which Sergeant Jefferson is pleading guilty, does anyone have an opinion at this moment as to whether or not Sergeant Jefferson is guilty of the remaining charges?

[Negative response.]

DC: Does everyone agree that you should have an opinion that Sergeant Jefferson is not guilty because the law presumes that a person is innocent until proven guilty?

\*       \*       \*

Affirmative responses from the panel.

Defense counsel continued the *voir dire* as follows:

Every crime, as the judge will explain to you, consists of elements. In other words, they're like building blocks that must be established by the prosecution in order for them to prove that there has been a crime, and every element of that offense must be presented.

The judge will instruct you about each element of the crime charged.

Do all of you understand and accept that each element must be proved beyond a reasonable doubt—not just some of them, but each and every one of them?

Can you all agree that, even if they can't prove one element, Sergeant Jefferson should be found not guilty?

Do you all agree with that?

Colonel Glodowski?

LTC GLODOWSKI: No, I don't agree with that.

DC: Colonel Barta?

LTC BARTA: No.

The judge noted that the question was "too complex" and confusing. After a further discussion about the elements of an offense, the prosecutor, seeking to help, suggested that an instruction on the law would better clarify the issue. The judge said that would not be necessary if the defense would "ask a clearer question." Nonetheless, the military judge then gave a brief instruction generally concerning elements of offenses, explaining that each element must be proved beyond a reasonable doubt. The defense then asked if all the members agreed to that proposition. They all replied in the affirmative. Earlier the prosecutor had asked them if they would "wait until all evidence is presented" before making "a decision." They all agreed to this. They also agreed to make the Government prove its case beyond a reasonable doubt.

### Inelastic Attitude of Members

Appellate defense counsel also complain that the judge failed to ensure that the members knew that no punishment was an option. Final Brief at 12.

When the members were asked about the option of no punishment, almost all of them responded that they could not consider such a sentence. At the end of *voir dire* after defense counsel announced their challenges, the judge instructed the members as follows:

Members, the issue that came up about "Would you consider no punishment?"—it's one of those bogeymen that comes up every now and then. It's kind of one of these philosophical arguments lawyers get into.

But the law requires that you have an open mind and that you have no preconceived idea of punishment.

Now, if you bring in a multiple ax murderer and you sit him down and you say, "Now, this guy is pleading guilty to multiple murders, will you consider no punishment?"—it's kind of an absurd question. Yet, depending on how you phrase it and what the crimes are, the law still requires that you keep an open mind and be able to consider the full range of punishments.

Understanding that you have that responsibility, are there any of you who can't follow the instruction to consider the full range of punishments?

Are all of you able to follow the instruction that you will consider the full range of punishments?

[Affirmative responses.]

Do you have any questions about that?

[Negative responses.]

Anything further?

DC: Yes, Your Honor.

We still have some challenges on alternate grounds.

The prosecutor obtained an assurance from the members that they would follow the judge's instructions even if they differed from their own view, would consider the broad "range of options from zero punishment up to the maximum" punishment, and would not draw any conclusions as to guilt because of pretrial proceedings. They agreed to apply the presumption of innocence, set aside any feelings of guilt, and rely only upon the evidence.

*Credibility of Witnesses*

As to LTC Barta's relationship with a witness, SGT Ebersole, the following exchange took place:

DC: Lieutenant Colonel Barta, you indicated that you were familiar with Sergeant Ebersole.

LTC BARTA: He's simply a member of the battalion. DC: Okay.

What position does he serve in your battalion?

LTC BARTA: He's a mechanic.

DC: And have you ever had any contact with him?

LTC BARTA: Not directly.

DC: And have you ever heard anything about him?

LTC BARTA: Other than he's a good— other than his duty performance, no.

DC: Have you ever heard that he's an untruthful person?

LTC BARTA: No.

DC: Do you have any reason to believe that he's not truthful?

LTC BARTA: No.

DC: Do you presume him to be truthful?

LTC BARTA: Yes.

## PROCEDURAL COMPLAINTS

The defense argues that the judge erred because he allowed only one defense counsel to conduct *voir dire;* failed to allow individual rather than group questions as to the rating chain; and erred in refusing to allow the defense to reopen *voir dire* concerning prospective members who had either friends or family members who were victims of crimes.

### Tag Team

After asking some questions on *voir dire,* the lead defense counsel asked the judge whether the assistant defense counsel could conduct part of the *voir dire.* The judge responded that he did not want a "tag team with the panel."

## Individual vs. Group Questions

Defense counsel later asked for individual *voir dire* of LTC Dennis, LTC Barta, LTC Glodowski, and Major (MAJ) Partridge. The judge responded: "Start. The first one?" The defense responded that he wanted to *voir dire* LTC Dennis individually because "she rates Major Partridge." The judge denied this request, remarking that the defense questions on this topic could be asked in open court.

LTC Dennis testified that she had disagreed with MAJ Partridge on "work-related matters" but it did not affect their "personal" or "professional" relationship. MAJ Partridge also testified that he had "questioned some of her decisions" in the past. But he testified that he could judge the facts fairly and would not be "influenced" by LTC Dennis. This completed the questioning on the superior and subordinate relationship, and defense counsel did not renew his request or set forth any reason for further individual *voir dire*.

## Reopening Voir Dire

When the *voir dire* was completed, the defense returned from a court break and asked to reopen *voir dire*. Co-counsel said two panel members, Master Sergeant (MSG) Mora and LTC Dennis, had stated that they or a close friend or relative had been a victim of crime. The defense wished to inquire further into these revelations, but the judge denied their request.

## Rulings on Challenges

The judge denied the following defense challenges for cause:

(1) all the members except MAJ Partridge for an inelastic attitude towards the punishment;

(2) LTC Seastrum and LTC Dennis based on their "preconceived notion[s] as to the defendant's guilt or innocence";

(3) LTC Barta because of legal advice he. had received from the prosecutors; and

(4) LTC Glodowski because he had brothers-in-law who were police officers. A challenge against him was granted on other grounds.

## GRANTED ISSUE & SPECIFIED ISSUE II

### DISCUSSION

■ The defense exercised a peremptory challenge against LTC Dennis but stated that they would have challenged another member if the judge had granted their challenges for cause. Thus the accused properly preserved for appeal the issue of challenges for cause. *United States v. Jobson*, 31 MJ 117, 120 (CMA 1990); RCM 912(f)(4), Manual for Courts–Martial, United States (1995 ed.).

■ The standard of review is whether there was "a clear abuse of discretion" by the judge in denying individual or group *voir dire*. *United States v. Parker*, 6 USCMA 274, 280, 19 CMR 400, 406 (1955); *see also United States v. Loving*, 41 MJ 213, 257 (1994),[2] *citing United States v. Smith*, 27 MJ 25, 28 (CMA 1988).

■ In reviewing whether the judge abused his discretion, we must look at the historical context of the purpose behind *voir dire*. *Voir dire* dates back to medieval times when questions were asked of jurors to ensure impartiality. *See generally* C. Bennett and R. Hirschhorn, *Bennett's Guide to Jury Selection and Trial Dynamics in Civil and Criminal Litigation* (1993); J. Van Dyke, *Jury Selection Procedures* (1977).

This practice continued through British rule in the United States and after the Revolutionary War. *Id.* During British rule, the Americans were concerned that in trials of political opponents the Crown may attempt to stack the jury in its favor. Gutman, *The Attorney–Conducted Voir Dire of Jurors: A Constitutional Right*, 39 Brooklyn L.Rev. 290, 294 (1972).

After the Revolutionary War, use of *voir dire* continued. Chief Justice John Marshall in *United States v. Aaron Burr*, 25 F. Cas. 49 (Cir.Ct.Va.1807), recognized that *voir dire*

---

**2.** *Affirmed,* — U.S. —, 116 S.Ct. 1737, 135 L.Ed.2d 36 (1996).

was a means to determine whether there was a personal bias. He stated:

> Why do personal prejudices constitute a just cause of challenge? Solely because the individual who is under their influence is presumed to have a bias on his mind which will prevent an impartial decision of the case, according to the testimony. He may declare that notwithstanding these prejudices he is determined to listen to the evidence, and be governed by it; but the law will not trust him.... He will listen with more favor to that testimony which confirms, than to that which would change his opinion; it is not to be expected that he will weigh evidence or argument as fairly as a man whose judgment is not made up in the case....

25 F. Cas. at 50.

Prior to 1920, 41 Stat. 790 (1920), peremptory challenges did not exist in the military. W. Winthrop, *Military Law and Precedents* 205 (2d ed. 1920 Reprint); R. Ives, *A Treatise on Military Law* 89 (1879). Adding peremptory challenges was an expansion of the purpose of *voir dire* from determining impartial jurors to also assisting counsel in exercising this new right. *See Mu'Min v. Virginia,* 500 U.S. 415, 431, 111 S.Ct. 1899, 1908, 114 L.Ed.2d 493 (1991).

The 1951 Manual permitted counsel to "question the court, or individual members thereof." ¶ 62*b,* Manual for Courts–Martial, United States, 1951. Judge Latimer (apparently joined by Chief Judge Quinn but not by Judge Brosman) expressed a preference for the Federal system in which the trial judge took responsibility for the *voir dire. See United States v. Parker,* 6 USCMA at 279, 285, 19 CMR at 405, 411. Even under the 1951 Manual, there is no doubt that the law officer, now the military judge, had the right to supplement counsel's questions. *Id.* at 282, 19 CMR at 408. What concerned the judges then and other judges now is misuse of *voir dire.* Judge Latimer stated in the Opinion of the Court in *Parker:*

> [W]e do not seek to encourage law officers to be miserly with counsel on the preliminary examination. Within the military system, if any reason is advanced therefor,

we think the law officer who either inquires himself or permits inquiry to determine with certainty that court-martial members will accept their law from the law officer, follows a desirable course....

6 USCMA at 282, 19 CMR at 408.

*Voir dire* is a valuable tool, *United States v. Holt,* 33 MJ 400, 411 (CMA 1991) ("few experienced trial advocates would doubt the importance of ... *voir dire* "), for both the defense and prosecution to determine whether potential court members will be impartial. It is also used by counsel as a means of developing a rapport with members, indoctrinating them to the facts and the law, and determining how to exercise peremptory challenges and challenges for cause. *Morgan v. Illinois,* 504 U.S. 719, 729, 112 S.Ct. 2222, 2230, 119 L.Ed.2d 492 (1992) ("part of the guaranty of a defendant's right to an impartial jury is an adequate *voir dire* to identify unqualified jurors").

■ However, since counsel ask questions that go beyond determining challenges, many judges prefer to conduct the *voir dire* to prevent wasting valuable time. A study of the federal courts demonstrates that three-fourths of federal district judges conduct the *voir dire* examination without oral participation by counsel. G. Bermant, *Conduct of the Voir Dire Examination: Practices and Opinions of Federal District Judges* (1977). After an experiment in the Court of Appeals for the Second Circuit, the judges concluded that it was better that the judges conduct their own *voir dire.* Sand and Reiss, *A Report on Seven Experiments Conducted by District Court Judges in the Second Circuit,* 60 N.Y.U.L.Rev. 423 (1985). *Voir dire* ensures the right to an impartial jury. Generally, the procedures for *voir dire* are within the discretion of the trial judge.

The military rule, RCM 912(d), modeled on federal practice, Drafters' Analysis, Manual, *supra* at A21–58 to A21–59 (1995 ed.), clarified the discretion of the judge concerning *voir dire,* stating:

> The military judge may permit the parties to conduct the examination of members or may personally conduct the examination. In the latter event the military judge shall

permit the parties to supplement the examination by such further inquiry as the military judge deems proper or the military judge shall submit to the members such additional questions by the parties as the military judge deems proper. A member may be questioned outside the presence of other members when the military judge so directs.

The Discussion amplifies on this provision as follows:

> The nature and scope of the examination of members is within the discretion of the military judge. Members may be questioned individually or collectively. Ordinarily, the military judge should permit counsel to personally question the members....

The Discussion also notes that the purpose of *voir dire* is to have an "intelligent exercise of challenges" and "counsel should not purposely use *voir dire* to present factual matter...." This rule varies the practice found in the Manual for Courts–Martial, United States, 1969 (Revised edition), which permitted counsel to conduct *voir dire* rather than the judge "personally conduct[ing] the examination with supplemental questions from counsel." *See United States v. Slubowski*, 7 MJ 461, 463 (CMA 1979), *reconsideration not granted by equally divided vote*, 9 MJ 264 (CMA 1980).

Based on this historical overview and the federal preference for the judge to conduct the *voir dire*, we shall examine the limitation of the questions in this case and the procedures employed by the judge to determine if there was an abuse of discretion.

## LIMITATION ON QUESTIONS

RCM 912(f)(1)(N) provides that a member shall be excused for cause wherever it appears to be "in the interest of having the court-martial free from substantial doubt as to legality, fairness, and impartiality."

The Discussion to this section provides:

> Examples of matters which may be grounds for challenge under subsection (N) are that the member: has a direct personal interest in the result of the trial; is closely related to the accused, a counsel, or a witness in the case; has participated as a member or counsel in the trial of a closely related case; has a decidedly friendly or hostile attitude toward a party; or has an inelastic opinion concerning an appropriate sentence for the offenses charged.

█ The military judge did not abuse his discretion in limiting the questions concerning the burden of proof, credibility of witnesses, and inelastic attitude of the members. In fact, he ensured the fairness and impartiality of the members.

### Burden of Proof

Even defense counsel admitted that his initial questions concerning the burden of proof were confusing when considered with the plea of guilty to DWI. When these questions were clarified by defense counsel, all the members agreed that the prosecution must prove each element of each offense beyond a reasonable doubt.

### Inelastic Attitude of Members

As to the inelastic attitude and the option of no punishment, if appellant was convicted of leaving the scene of an accident, committing indecent acts, and damaging personal property, as well as disorderly conduct, the probability of receiving a sentence of no punishment would be very slim. This Court stated in *United States v. McGowan*, 7 MJ 205, 206 (1979):

> [A] mere predisposition to adjudge some punishment upon conviction is not, standing alone, sufficient to disqualify a member. Rather, the test is whether the member's attitude is of such a nature that he will not yield to the evidence presented and the judge's instructions.

As we stated in *United States v. Heriot*, 21 MJ 11, 13 (1985):

> We are sympathetic with the plight of court-martial members who on *voir dire* are asked hypothetical questions about the sentence they would adjudge in the event of conviction....

\*       \*       \*

Probably very few court members who state on *voir dire* that they would not adjudge a particular sentence if the accused is convicted have fully considered the implications of their answers. Therefore, in order to lessen the occasions for excusing a member who has been challenged because of an allegedly inflexible attitude as to sentence, the military judge may wish to give the member additional instructions and ask him some clarifying questions. *Cf. United States v. Tucker,* [16 USCMA 318, 36 CMR 474 (1966)]. For example, he may remind the court member that later in the trial, if there is a conviction, evidence and argument may be presented as to an appropriate punishment and then the judge will give detailed instructions as to sentencing....

*See also United States v. Smart,* 21 MJ 15 (CMA 1985).

The military judge should not have demeaned the no-punishment option by calling it "one of those bogeymen." Nonetheless, all of the members' responses to the judge signaled that they would follow the instructions and "consider the full range of punishments." Earlier the prosecution had obtained a similar assurance from the members that they would follow the instructions and consider the broad "range" of punishment "from zero punishment" to the maximum.

### Credibility of Witnesses

As to the questions of how LTC Barta would view the credibility of SGT Ebersole, it seems clear that his answers indicated he was not familiar enough with the witness to have drawn any final conclusion. LTC Barta indicated that SGT Ebersole was "simply a member of the battalion." Although he did state that he had not heard that SGT Ebersole had a reputation as "an untruthful person" and he would "presume him to be truthful," all of the members agreed that they would "wait until all evidence is presented" in the case, and follow the instructions of the judge, including an instruction as to credibility of witnesses, before making a decision.

### PROCEDURAL COMPLAINTS

■ As to the procedural complaints, we hold that the judge did not abuse his discretion in not allowing double-teaming by counsel during *voir dire* or in limiting individual and group *voir dire,* but he did abuse his discretion in refusing to reopen *voir dire.*

■ It is within the judge's discretion whether to allow individual or group questions. *United States v. Bakker,* 925 F.2d 728, 734 (4th Cir.1991); *United States v. Magana–Arevalo,* 639 F.2d 226, 228 (5th Cir. 1981); *see also United States v. Gerald,* 624 F.2d 1291, 1296 (5th Cir.1980).

The defense complaint on appeal that defense counsel could not question LTC Barta individually concerning the credibility of SGT Ebersole is not persuasive. Trial defense counsel never renewed their request to conduct individual *voir dire* after they were given the opportunity in open court to explore any bias LTC Barta may have had with regard to SGT Ebersole, and the defense did not challenge LTC Barta as a result of his response concerning the witness. The answers by LTC Barta did not by themselves establish that questioning outside the hearing of the other members was necessary, and the defense did not set forth any further reasons for individual *voir dire* of him.

The defense argues that this exchange in front of the other members may have had an impact on the results because SGT Ebersole was a key witness. However, trial defense counsel never asked for a side bar to set forth specifically this reasoning. Indeed, the defense never mentioned it at any time. The defense argues that while defense counsel did not set forth these reasons, "there were clearly numerous reasons to question all of them individually." The defense also argues that they were inappropriately "required ... to articulate ... reasons for wanting individual *voir dire* in front of all the members." Final Brief at 18.

■ However, this argument ignores the options available to the defense. Counsel could have requested a session under Article 39(a), UCMJ, 10 USC § 839(a), or a sidebar to set forth the reasons for individual *voir*

*dire* and make it a matter of record. He chose not to utilize these options.

### Rating Chain

■ Courts have been concerned with *voir dire* as to the military superior-subordinate relationship. Nevertheless, the "mere" existence of this relationship "does not generally give rise to a challenge for cause." *See, e.g., United States v. Blocker,* 32 MJ 281, 287 (CMA 1991). The parties or the judge should question the prospective members as to this relationship to ensure that there is no problem as to the exercise of independent judgment. *Id.* While this relationship does not require a *sua sponte* inquiry by the judge, certainly the judge cannot preclude the parties from making the inquiry if the judge chooses not to do it.

Here the judge permitted a rather broad range of questions, and where those questions were confusing, he tried to clarify them. This does not show bias by the judge.

### Victims of Crimes

■ The fact that a court member's family member, friend, or relative was a victim of a crime similar to the crime charged is not a *per se* disqualification. *United States v. Brown,* 34 MJ 105, 110 (CMA 1992); *United States v. Reichardt,* 28 MJ 113, 116 (CMA 1989); *United States v. Smart,* 21 MJ 15, 20 (CMA 1985); *United States v. Porter,* 17 MJ 377, 379 (CMA 1984); *United States v. Harris,* 13 MJ 288 (CMA 1982). Answer to Final Brief at 13.

■ However, this Court cannot countenance cutting off *voir dire* questions as to potential grounds for challenge of members having friends and family who were victims of crimes. We agree with what the Army Court of Military Review stated in *United States v. McMillion,* 16 MJ 658, 660 (1983):

We recognize that trial judges are consistently confronted by overcrowded dockets and occasionally by inexperienced or inefficient counsel whose in-court performance will tax their patience. However, these are inadequate justifications for expediting proceedings, especially where the accused's rights-such as the right to an im-

partial court-are at stake. "The duty to hear all proceedings fairly and with patience is not inconsistent with the duty to dispose promptly of the business of the court. Courts can be efficient and business-like while being patient and deliberate." Code of Judicial Conduct Canon 3A(3) commentary (1972).

In the past this Court has concluded that a member who has been the victim of a crime would not automatically be disqualified, but, depending upon *voir dire* answers, the member may be disqualified or the answers may prompt a peremptory challenge. *See United States v. Reichardt, supra.*

■ We are reluctant to impute implied bias as a matter of law. The Supreme Court refused to do that in *Smith v. Phillips,* 455 U.S. 209, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982), when a juror had sought employment with the prosecutor's office during trial, and in *Remmer v. United States,* 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654 (1954), when there was an attempted bribe of a juror.

In *Rushen v. Spain,* 464 U.S. 114, 104 S.Ct. 453, 78 L.Ed.2d 267 (1983), the Supreme Court, in rejecting an argument for automatic reversal for implied bias, held that an innocuous *ex parte* communication between a trial judge and a juror was harmless error.

In *Smith v. Phillips,* 455 U.S. at 222, 102 S.Ct. at 948, Justice O'Connor, concurring, stated that

there are some *extreme situations* that would justify a finding of implied bias. Some examples might include a revelation that the juror is an actual employee of the prosecuting agency, *that the juror is a close relative of one of the participants in the trial or the criminal transaction,* or that the juror was a witness or somehow involved in the criminal transaction....

(Emphasis added.)

■ The reliability of a verdict depends upon the impartiality of the court members. *Voir dire* is fundamental to a fair trial. *See Irvin v. Dowd,* 366 U.S. 717, 722, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1961)

(recognizing that among those basic fair trial rights is the right to an impartial adjudicator). Central to this right is the need to conduct a full *voir dire* to determine challenges for cause and peremptory challenges. *See McDonough Power Equipment, Inc. v. Greenwood,* 464 U.S. 548, 554, 104 S.Ct. 845, 849, 78 L.Ed.2d 663 (1984)("One touchstone of a fair trial is an impartial trier of fact" and *voir dire* "serves to protect that right."). We recognize that judges are sometimes required to "ride" a circuit and often have crowded dockets. But when co-counsel reminds counsel conducting the *voir dire* that further inquiry was omitted on a critical issue, judges should be patient and allow that inquiry to be conducted.

We hold that the judge abused his ample discretion by failing to allow counsel to reopen the *voir dire* to ensure impartial court members. Because of the potential impact of this abuse on the right to a trial by impartial members, corrective action is required.

## SPECIFIED ISSUE I

### FACTS

On August 5, 1993, appellant was read his rights by Military Police Investigator Terry D. Davis, and appellant waived them. He was again questioned on August 9, 1993, by Investigator Davis. The record reflects the following:

Q. Was he advised of his Article 31 rights prior to taking the statement on the 9th?

A. He wasn't advised, verbatim, off the [Form] 3881, sir. He was asked if he remembered the rights' advisement done on 5 August.

Q. What was his response after you asked him if he remembered the rights advisement given on 5 August?

A. He said, yes, he did.

Q. Okay.

Further, the investigator testified that at the time of the second interview he did not think appellant was a suspect. The judge had asked the investigator: "So, if somebody borrowed his car, he wouldn't even be a suspect anymore, right?" The investigator

agreed. The judge made the following findings:

I find that the agent, by his own testimony, did not consider the accused a suspect, but, even if, objectively, the accused was a suspect, that the Military Rules of Evidence were complied with by reminding the accused of his prior waiver and asking if he remembered it and understood those rights, and the accused thereafter voluntarily continued the interview; that the accused was not in custody during the interim period and that the accused came back to the CID office [sic] voluntarily.

## SPECIFIED ISSUE I

### DISCUSSION

■■■■ The general rule is that if warnings are given properly the first time and there is a continuance of the interrogation, separate warnings are not needed. *See, e.g., United States v. Schultz,* 19 USCMA 311, 41 CMR 311 (1970) (7–hour interval found to be one continuance session); *United States v. White,* 17 USCMA 211, 38 CMR 9 (1967) (one day between interrogations held to be continuous); *cf. United States v. Boster,* 38 CMR 681 (ABR 1967) (interrogation separated by 10 days found to be separate); *see also United States v. Weston,* 1 MJ 789 (AFCMR 1976).

We hold that under the facts of this case where the second interrogation is 4 days later by the same agent concerning the same subject matter, it is sufficient to remind the suspect of his rights and to have a waiver based upon such reminder.

### DECISION

The decision of the United States Army Court of Criminal Appeals is set aside. The record of trial is returned to the Judge Advocate General of the Army for submission to a convening authority for a hearing, before the judge who presided at trial, under *United States v. DuBay,* 17 USCMA 147, 37 CMR 411 (1967), to question Master Sergeant Mora and Lieutenant Colonel Dennis concerning their friend or relative who had been a victim of crime. *Cf. United States v. Mack,*

41 MJ 51 (CMA 1994). The judge should make findings of fact as to whether the friend's or relative's connection with the member or the crime was so remote that no reasonable judge would have granted a challenge for cause. If the judge determines that the record justifies such a finding, the record of trial should be returned directly to this Court. Otherwise, the convening authority may order a rehearing. The record of any rehearing will be sent to the Court of Criminal Appeals for review under Article 66, Uniform Code of Military Justice, 10 USC § 866, or if appropriate, review will be under Article 69, UCMJ, 10 USC § 869.

Judge GIERKE and Senior Judge EVERETT concur.

SULLIVAN, Judge (dissenting):

I disagree with the majority's action in this case for several reasons. Before stating my reasons for finding no abuse of discretion by the military judge in this case, consideration of the record in more detail is required.

Defense counsel personally conducted group *voir dire* of the members in this case. He asked them:

> Have any of you, or close friends of yours or relatives, ever been the victim of a crime?

Affirmative responses from Master Sergeant Mora, Lieutenant Colonel Dennis and Lieutenant Colonel Barta.

> Have any of you, or any of your friends or relatives, ever been a witness to a crime?

Affirmative response from Lieutenant Colonel Dennis.

> Anyone else ever been a witness or a friend of yours—have they ever been a witness to a crime—or a family member?

MJ: I've been passed on the autobahn in a speed limited zone, and people have gone past me over the speed limit.

DC: Other than, perhaps, minor traffic violations such as speeding.

Negative responses, apart from Lieutenant Colonel Dennis.

Later defense counsel requested individual *voir dire* of Lieutenant Colonel Dennis, LTC Barta, LTC Glodowski, and Major Patridge. It was granted by the judge. No follow-up questions were asked by defense counsel concerning their being a victim of crime or their relatives being the same. Defense counsel indicated he had no further questions.

Later on, challenges were made in this case and denied by the military judge. A peremptory challenge against LTC Dennis made by the defense was granted. The court then recessed prior to calling the members. When the court came to order with the members absent, the record shows the following:

MJ: Defense, you had something?

DC: Yes, Your Honor.

> Your Honor, the defense would just like to clarify that, but for the judge's ruling with respect to the defense's challenges for cause as to the panel members, it would have exercised its peremptory challenge for someone else as opposed to the preemptory challenge it actually elected.

> Co-counsel has also indicated to myself that, during the voir dire, two panel members had actually indicated affirmative responses to the question of whether or not they, their family members or friends were victims of crimes. We would like to open up those questions at this time.

MJ: Denied.

In my opinion, affirmance is the proper course of action in this case. Defense counsel was provided a reasonable opportunity to inquire further as to whether any member or a relative of a member was a victim of a crime similar to that charged in this case. Defense inaction simply does not establish a judicial abuse of discretion. *See United States v. Slubowski*, 7 MJ 461 (CMA 1979), *reconsideration not granted by equally divided vote*, 9 MJ 264 (CMA 1980). Moreover, the decisions cited by the majority concern cases where the member himself, not a relative, had been a victim of the crime similar to that charged in the case on which the member might sit. *See United States v. Reichardt*, 28 MJ 113 (CMA 1989), and *United States v. Smart*, 21 MJ 15 (CMA 1985). Finally, no additional support for these challenges has been filed in this case from any of

the members which would enlighten this Court on these matters. *Cf. United States v. Mack*, 41 MJ 51, 55 (CMA 1994). I see no abuse of discretion in these circumstances.

COX, Chief Judge (dissenting):

I join Judge Sullivan's dissent. Furthermore, I know of no case, no statute, no constitutional provision that grants an accused the right to conduct *voir dire* of prospective court members or jurors. The language found in RCM 912, Manual for Courts–Martial, United States (1995 ed.), outlines procedures for acquiring information about prospective court members to enable the military judge to determine if those persons are qualified to sit on a particular case. To the extent that Rule was intended to extend the examination of court members (*voir dire*) beyond questions designed to ensure that the members are statutorily qualified, it does so in the discretion of the military judge. RCM 912(d) states:

> (d) Examination of members. The military judge may permit the parties to conduct the examination of members or may personally conduct the examination. In the latter event the military judge shall permit the parties to supplement the examination by such further inquiry as the military judge deems proper or the military judge shall submit to the members such additional questions by the parties as the military judge deems proper. A member may be questioned outside the presence of other members when the military judge so directs.

Given this state of the law, I am unwilling to conclude that the military judge committed reversible trial error by his failure to allow defense counsel to re-open the examination of members for follow-up questions. If we consider the entire process used in this case to select members, it seems to me that we are compelled to conclude that appellant's court members were qualified to sit. Accordingly, I would affirm.

Even so, if the majority is correct that the military judge abused his discretion by his failure to allow defense counsel to re-open the *voir dire* of the members, then the remedy is to reverse the case and give appellant a rehearing. The members have now concluded beyond a reasonable doubt that appellant is guilty. They are now "partial" as a matter of law.

Furthermore, post-trial *voir dire* of a member as "to the effect of anything upon the member's or any other member's mind or emotions as influencing the member to assent to or dissent from the findings" is expressly prohibited by Mil.R.Evid. 606(b), Manual, *supra*. To permit post-trial *voir dire* of a court member regarding such a subjective topic as whether the member personally or a close member of his family had been a victim of a crime indirectly, if not directly, touches upon the emotions, and the bias or prejudice of the juror. We should not allow such a broadside attack upon the integrity of a court member. *See United States v. Loving*, 41 MJ 213 (1994), *aff'd*, —— U.S. ——, 116 S.Ct. 1737, 135 L.Ed.2d 36 (1996).

To repeat: If the judge was wrong, we should reverse the case. If he was right, we should affirm. Otherwise, we should not go on a search-and-rescue operation to try to save the conviction at the expense of attacking the impartiality of a court member by a post-conviction inquiry.