### UNITED STATES

v.

### Corey J. SIMMONS, Seaman (E–3), U.S. Naval Reserve.

### NMCM 9900723.

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 29 June 1998.

Decided 16 March 2001.

---

LCDR Robert C. Klant, JAGC, USN, Appellate Defense Counsel.

LT James E. Grimes, JAGC, USNR, Appellate Government Counsel.

Before LEO, Chief Judge, ANDERSON, Senior Judge, and PRICE, Appellate Military Judge.

PRICE, Judge:

The appellant stands convicted by a general court-martial composed of officer and enlisted members. At trial, the appellant pleaded guilty to one specification of unauthorized absence in violation of Article 86, Uniform Code of Military Justice, 10 U.S.C.

§ 886. He pleaded not guilty to one specification of rape and one specification of unlawful entry in violation of Articles 120 and 134, UCMJ, 10 U.S.C. §§ 920 and 934.[1] The court-martial acquitted him of unlawful entry but convicted him of rape. The adjudged and approved sentence was confinement for 12 months, reduction to E–1, and a bad-conduct discharge.

We have carefully examined the record of trial, the assignments of error, and the Government's response. We conclude that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed. Arts. 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a) and 866(c).

## I. Record of Trial is Not Verbatim

The appellant contends that the record of trial is not verbatim and is substantially incomplete, requiring that we set aside the findings of guilty as to Charge I, rape, and the sentence. We agree that the record is not verbatim but find that the Government has rebutted the presumption of prejudice.

The transcript of this record of trial contains two portions that are not verbatim. The first is a summarized record of an Article 39(a), UCMJ, session held before the court-martial was assembled. The part of that day's proceedings that was summarized lasted about 20 minutes. Record at 54a–54c. According to the record, a summary was necessary because the recorded tape for this session was inaudible. The summary was constructed from the military judge's and court reporter's notes, with input from both counsel. Record at 54a–54c, 749–50. The second portion purports to be a verbatim account of the proceedings, but contains numerous missing words followed by the note, "[unintelligible]." Record at 602–602L. Apparently, the tape for this portion was at a very low volume. Although not precisely documented in the record, from our experience, we estimate that the proceedings recorded at pages 602–602L lasted at least 50 minutes. The tape for this portion was examined by technical experts and enhanced to

allow for greater volume and clarity. The military judge and both counsel then listened to the enhanced tape and made a few changes. In a post-trial Article 39(a), UCMJ, session, neither side offered any additional changes. Record at 750.

Article 54(c), UCMJ, 10 U.S.C. § 854(c), requires the preparation of a complete record of trial in a general court-martial in which the adjudged sentence includes a discharge. In addition, the President has prescribed that the record in such a case must include a verbatim written transcript. RULE FOR COURTS-MARTIAL 1103(b)(2)(B), MANUAL FOR COURTS-MARTIAL, UNITED STATES (1995 ed.). Verbatim means: "Word for word: in the same words." *United States v. Lashley*, 14 M.J. 7 (C.M.A.1982). Nevertheless, our superior court has long recognized that literal compliance with that requirement is impossible. *Lashley*, 14 M.J. at 8. Instead, the test is whether the record of trial is substantially verbatim. *United States v. Henry*, 53 M.J. 108 (2000). A substantial omission renders a record incomplete and raises a presumption of prejudice that the Government must rebut. *Henry*, 53 M.J. at 111. Whether an omission is substantial is reviewed by the appellate courts *de novo*. *Henry*, 53 M.J. at 110.

We have no difficulty in finding that the summarized transcript at pages 54a–54c is not a substantial omission. At this Article 39(a), UCMJ session, the military judge, Captain Hunt, first covered a number of procedural matters, most of which had been addressed in some degree by the military judge who presided at the initial Article 39(a), UCMJ, session in the case, Captain Leachman. Captain Hunt announced his qualifications, invited *voir dire* and challenge, reiterated advisories of the appellant's rights to counsel and choice of forum, and obtained the appellant's previously stated elections on those issues. Then followed litigation of a defense motion *in limine* as to the admissibility of a prior act of the appellant. After hearing testimony and argument, the mili-

---

1. Other charges of indecent assault and indecent acts were dismissed before findings were entered.

tary judge granted the motion and ordered the Government not to present any evidence of the prior act. Our review of the record reveals that the Government complied with this ruling.

The net effect of this 20 minutes of court time is that the military judge changed. Neither side conducted *voir dire* of the new military judge, nor did either side challenge him. Other than the formalities associated with the initial appearance of the military judge, there was little forward progress made in the trial. Even if we were to find that the lack of a verbatim transcript represents a substantial omission, we have no hesitation in concluding that the appellant suffered no prejudice. As the Government states in its brief, the appellant benefited by the judge's ruling on the motion *in limine*. Nothing occurred that could possibly be construed as contrary to the appellant's interests.

■ The second portion of the record in question is more problematic. In this 13–page, ostensibly verbatim account of the proceedings are numerous missing words and no less than 30 uses of the note, "[unintelligible]." Record at 602–602L. Included in this portion is the testimony of two expert witnesses called by the Government to rebut damaging evidence elicited by the defense, interspersed with an Article 39(a), UCMJ, session where the defense objected to the testimony of the second witness. We cannot conclude that this is an insubstantial omission.

■ We must next decide whether the Government has carried its burden in showing that the appellant was not prejudiced by this substantial omission. The first expert witness was Commander Bradshaw, a Navy physician with specialty training in sleep disorders. Before the tape recording equipment malfunctioned, he testified on direct examination that, assuming the victim was asleep when intercourse was initiated, there was a great likelihood that she was sleeping deeply. Of greater importance, he then said that it was possible that the victim could have slept through the appellant's moving her into position for intercourse. On cross-examination, Dr. Bradshaw conceded that he had neither talked to nor examined the victim and that the degree of stimulus assumed by the prosecution's theory of rape would awaken some, even most people. However, he also reiterated that there is a significant possibility she slept through the pre-rape physical stimulus. After redirect examination, which added little testimony of value to either side's case, the equipment malfunction began.

At this point, the defense asked nine questions in recross-examination. Out of nine, seven of the questions and the associated responses are verbatim. The remaining two questions and responses are not verbatim, but the gist of the exchanges between counsel and witness is clear: most people probably would have awakened to the described stimulus. As the Government argues in its brief, this point was previously established in a verbatim record of the cross-examination of the witness.

In its second redirect examination, the prosecution asked six questions. Although most of the questions and answers are not verbatim, there is enough here for us to conclude that the Government reaped little additional benefit and the defense suffered little, if any, prejudice. The same can be said for the brief second recross-examination. Dr. Bradshaw concluded his testimony by answering two questions from the members that reiterated his previous transcribed testimony.

The next rebuttal witness was Ms. Elizabeth Becker. Before she took the stand, defense counsel objected to her testimony on grounds of relevance, improper rebuttal, and fairness. Trial counsel responded. This interchange among counsel and the military judge is not verbatim. Some comments are partially transcribed; one by the trial counsel and two by the defense counsel are missing entirely. However, the substance of this Article 39(a), UCMJ, session is plain: the military judge was not persuaded by the defense preemptive strike and instead deferred a final ruling on her testimony. Trial counsel was given an opportunity to qualify the witness before the members. The defense counsel then had the option of renew-

ing his objection, which he declined to do. The military judge granted the defense additional time to prepare for Ms. Becker's testimony, but refused to order the witness to submit to an interview. When Ms. Becker took the stand, trial counsel elicited her professional qualifications, then offered her as an expert in the field of trauma and trauma treatment. Without objection, the military judge recognized her as an expert witness in those areas. At that point, the tape returned to a normal audible level. Record at 602L. The remainder of the record consists of a verbatim transcript.

Although this nonverbatim record contains a substantial omission, we find it adequate to permit informed review by this court and any other reviewing authorities. After a careful line-by-line review of this non-verbatim portion of the transcript at pages 602–602L, we are satisfied that the appellant has suffered no prejudice.

## II. Improper Opinion Testimony That Appellant Was Lying

The appellant next asserts that the military judge erred when he overruled a timely defense objection and allowed a civilian police detective to testify that, in her opinion, the appellant was lying when he denied raping the victim. We agree, but find no prejudice.

The detective was called to testify in the Government's case-in-chief. She explained that she and an agent from the Naval Criminal Investigative Service had interrogated the appellant on three different occasions. Initially, the appellant said that on the night of the incident, he knocked on the door of the victim's motel room and the victim opened the door. According to the appellant, she was completely naked. She turned and walked to the bed and laid down. The appellant followed her into her room, removed his clothes, and fondled her. He flatly denied having any intercourse with her. Later, after having been told that his semen was found in her vagina,[2] he changed his story and said that he had consensual intercourse with her. However, the appellant never confessed that he had forced her to have intercourse.

In redirect examination, the trial counsel asked the detective "if there was anything that he [the appellant] did during the interrogation or any way he acted that was different from anything that other people you've interrogated have acted?" Record at 240–41. The defense counsel immediately objected on grounds of relevance. The trial counsel responded that it was relevant and that the question "would go to his—his credibility and his intent at the time he gave the statement." Record at 241. The defense then complained that "it seems that the prosecution is asking the detective to be a human lie detector in the case." *Id.* The military judge overruled the objection. The trial counsel then asked the detective, "Was there anything out of the ordinary that caused you to stop and think?" Record at 242. The answer was, *"I thought he was being untruthful with me."* (emphasis added). *Id.* After two other innocuous questions and answers, the trial counsel ended his redirect examination. The defense had no further questions. Neither did the members.

It is black-letter law that an expert witness may not offer an opinion regarding the verity of an out-of-court declaration. *United States v. Schlamer,* 52 M.J. 80 (1999). Both sides treated the detective as an expert witness in sexual assault interrogations. Although the trial counsel argued that he was not making the witness a "human lie-detector" through his question, we find that is exactly what happened. The military judge erred when he overruled the defense objection and allowed the question. However, this does not end our inquiry.

In conducting our analysis, we resort to a recent decision from our superior court for guidance. In *United States v. Harris,* 51 M.J. 191 (1999), the trial counsel repeatedly ignored warnings from the military judge and asked various expert witnesses for their respective opinions of both the victim's accusations and the accused's denial. We note that, as in this case, the defense counsel made timely objections to most of the prohibited questions. In that case, the military

---

2. In fact, there is no evidence in this record that the appellant's semen was found in the victim's

vagina. The detective used a ruse common in police interrogations.

judge sustained each objection. He also instructed the members to disregard the improper testimony. Despite the number and nature of the impermissible prosecution questions, the conviction was affirmed. The Court held that "[p]roper limiting instructions, along with the presumption that the members followed those instructions, eliminated the risk of harm from this improper credibility evidence." *Harris,* 51 M.J. at 196 (citing *United States v. Skerrett,* 40 M.J. 331, 333–34 (C.M.A.1994)). When comparing this important precedent with the facts of this case, we note that the military judge allowed the objectionable question here. However, this record contains only one such impermissible question and answer regarding credibility. Moreover, in *Harris,* the accused testified at trial, thus placing his credibility in issue. Here, the appellant never testified.

In further considering whether this error was materially prejudicial to the appellant, we have reviewed and considered the entire record. Art. 59(a), UCMJ; *United States v. Petersen,* 24 M.J. 283, 285 (C.M.A.1987). Significantly, this is not a classic "swearing contest" between the prosecutrix and a testifying accused. The prosecution introduced other corroborating evidence in support of the victim's accusation and in opposition to the appellant's denial of rape. Petty Officer Dixon and Ms. Guzman both testified that the appellant made admissions after the incident that directly corroborated the victim's account of "doggie-style" sexual intercourse. Moreover, there was testimony that the appellant, Dixon, and others concocted a plan to cover up the appellant's culpability.

Finally, we note that the military judge instructed the members that it was their sole responsibility to evaluate the credibility of witnesses. He specifically advised the members that "no expert witness can testify that the alleged victim's account of what occurred is true or credible, that the expert believes the alleged victim, or that a sexual encounter occurred." [3] Record at 685. We presume that the members followed this instruction and find that the appellant has not been unfairly prejudiced by the erroneous admission of the detective's testimony.

## III. Providence of Guilty Plea

The appellant contends that the military judge erred in accepting his plea of guilty to unauthorized absence terminated by apprehension. He argues that the record does not establish a factual basis for termination by apprehension. We disagree.

▆ A military judge may not accept a guilty plea to an offense without inquiring into its factual basis. *United States v. Care,* 18 C.M.A. 535, 40 C.M.R. 247, 1969 WL 6059 (1969); Art. 45(a), UCMJ, 10 U.S.C. § 845(a). Before accepting a guilty plea, the military judge must explain the elements of the offense and ensure that a factual basis for the plea exists. *United States v. Faircloth,* 45 M.J. 172, 174 (1996); *United States v. Davenport,* 9 M.J. 364, 367 (C.M.A.1980). Mere conclusions of law recited by the accused are insufficient to provide a factual basis for a guilty plea. *United States v. Outhier,* 45 M.J. 326, 331 (1996)(citing *United States v. Terry,* 21 C.M.A. 442, 45 C.M.R. 216, 1972 WL 14158 (1972)). The accused "must be convinced of, and able to describe all the facts necessary to establish guilt." R.C.M. 910(e), Discussion. Acceptance of a guilty plea requires the accused to substantiate the facts that objectively support his plea. *Id.; United States v. Schwabauer,* 37 M.J. 338, 341 (C.M.A.1993).

▆ A military judge may not "arbitrarily reject a guilty plea." *United States v. Penister,* 25 M.J. 148, 152 (C.M.A.1987). The standard of review to determine whether a plea is provident is whether the record reveals a substantial basis in law and fact for questioning the plea. *United States v. Prater,* 32 M.J. 433, 436 (C.M.A.1991). Such rejection must overcome the generally applied waiver of the factual issue of guilt inherent in voluntary pleas of guilty. The only exception to the general rule of waiver arises when an error prejudicial to the substantial rights of the appellant occurs. R.C.M. 910(j); Art. 59(a), UCMJ.

---

3. Although the detective's testimony directly addressed the **appellant's** credibility during his interrogation, as a practical matter, it may also be viewed as lending some credibility to the **victim's** complaint of rape. This instruction also tended to disarm this effect.

In our review of the record, we note that the military judge accurately listed the elements of the offense of unauthorized absence and correctly defined "apprehension." The appellant indicated an understanding of the elements and admitted that those elements correctly described what he did. Record at 82–83.

The appellant pleaded guilty to an unauthorized absence from his unit from 5 March 1998, until terminated by apprehension on 3 April 1998. The appellant explained that his absence terminated when he was apprehended by the Sparks, Nevada Police Department for jaywalking. The police then found out that he was an unauthorized absentee. Although the military judge did not question how the police learned this fact, there is nothing in the record suggesting that the appellant was the source. Nor is there any reason to question the apprehension that the appellant admitted and described for the military judge. We find no substantial basis in law or fact to question this guilty plea. The assignment of error is without merit.

## IV. Evidence of Unauthorized Absence as Consciousness of Guilt of Rape

The appellant argues that the military judge erred in instructing the members that they could consider the appellant's plea of guilty to unauthorized absence (UA) as evidence of the appellant's consciousness of guilt of rape.[4] We disagree.

The appellant raped the victim on 7 June 1997. As discussed previously, naval and civilian authorities immediately investigated the circumstances surrounding the rape. However, the charge of rape was not preferred until 11 February 1998. The appellant was formally informed of that charge on 13 February. About one week later, on about 20 February, his defense counsel told him he would soon face an Article 32, UCMJ, investigation on the rape charge with the possibility that it could then be referred to trial by court-martial.

Earlier in the month of February, the appellant submitted a urine sample for routine urinalysis. On 4 March, the appellant noticed red chalk near his name on his unit status board. He understood that that meant his urine sample had tested positive for illegal drugs. In fact, the appellant learned later that his urinalysis was negative. On 4 March, the same day that he noticed the alarming red chalk by his name, the appellant left the San Diego area for Nevada. The next morning, he missed muster at his unit, commencing a one-month UA.

The defense counsel made a timely motion to suppress evidence of the UA, citing R.C.M. 913(a), MIL.R.EVID. 402, MANUAL FOR COURTS-MARTIAL, UNITED STATES (1995 ed.), unfair prejudice, and case law. The Government opposed the motion, arguing that Mil. R.Evid. 404(b) allowed for this evidence to be considered as consciousness of guilt. The military judge made detailed findings of fact and conclusions of law and denied the motion. Appellate Exhibit XVIII. In his preliminary instructions, the military judge informed the members of the appellant's guilty plea and conviction of UA, then charged the members that they could not consider that plea in making findings on the remaining charges. There was no objection to this instruction.

Before the members, the trial counsel published a stipulation of expected testimony of Chief Legalman Peeler that described how the appellant was informed of the rape charge, informed of the pending Article 32, UCMJ, investigation, and that the appellant subsequently went UA. We note that the stipulation made no mention of the appellant's urinalysis. However, in the defense's case-in-chief, another stipulation of expected testimony was introduced in which Chief Peeler's supervisor, LT Bellon, attested that there were rumors at the command that the appellant had tested positive on the urinalysis in question. She did not know if the appellant had heard the rumors. In his argument on findings, the trial counsel twice mentioned the UA as being an indication that the appellant knew he was guilty of rape and fled to avoid prosecution. In opposition, the defense counsel argued that, if the appellant

---

4. Although the appellant's brief does not say so, we read it to mean that the military judge first erred in denying a motion *in limine* and ruling

that evidence of the appellant's UA could be submitted to the members.

was fearful of a rape prosecution, he had nine months to flee before he actually did, and that his UA was an act of a scared young Sailor who had just found out he would be charged unjustly with a drug offense based on his erroneous suspicion about the urinalysis result.

In his instructions on findings, the military judge repeated his earlier instruction that the members could not consider the guilty plea to UA on the remaining charges. He then explained a "very limited exception" to that rule:

> Evidence of flight may sometimes be considered, together with all other facts in the case, to justify an inference of the accused's guilt on one or more charges before the court.

> In this case, evidence has been presented that the accused's period of unauthorized absence began close in time to an Article 32 investigation of the charged offenses. Evidence was also presented that indicated that the accused may have committed the unauthorized absence offense because he was concerned about a report that his urinalysis test had tested positive.

> The members may also believe, after evaluating the evidence, that the unauthorized absence of the accused is not related to either the remaining charged offenses or the accused's understanding that his urinalysis sample had tested positive.

> You are advised that you may not use the unauthorized absence of the accused to draw any inference of the accused's guilt on the charged offenses unless you find beyond a reasonable doubt that the evidence proves the accused's unauthorized absence was to avoid processing of the charges before this court. If you do not find beyond a reasonable doubt that the accused's absence was to avoid the processing of the charged offenses, then you may not draw any inference of guilt as to the charged offenses, and you must strictly follow the instructions provided in the first paragraph of the spillover instruction.

Record at 688–89. We note that, when asked, the defense twice had no objection to this instruction.[5] Record at 625, 693.

■ We review a military judge's evidentiary rulings for an abuse of discretion. Findings of fact are overturned only when they are clearly erroneous or unsupported by the record. We review conclusions of law *de novo*. Thus, we reverse for an abuse of discretion if the findings of fact are clearly erroneous or if the military judge's decision is influenced by an erroneous view of the law. *United States v. Owens,* 51 M.J. 204 (1999).

■ We first note that Finding of Fact #5 states that the rape charge was preferred on 13 February 1998. In fact, the preferral was signed on 11 February 1998. Charge Sheet. We are not inclined to reverse based on this error. Otherwise, we find that the findings of fact are not clearly erroneous.

In our review of his conclusions of law, we observe that the military judge flatly concluded that the appellant went UA because he had recently been informed that he would soon face an Article 32, UCMJ, investigation on charges of rape and sexual assault. He then concluded that the UA was relevant evidence of his consciousness of guilt of those charges. Having balanced the probative value of this evidence against the danger of unfair prejudice, the judge admitted the evidence.

Military case law has long supported the admission of evidence of flight as evidence of consciousness of guilt. *United States v. Buchana,* 19 C.M.A. 394, 41 C.M.R. 394, 1970 WL 7365 (1970); *United States v. Harris,* 6 C.M.A. 736, 21 C.M.R. 58, 1956 WL 4551 (1956); *United States v. Johnson,* 6 C.M.A. 20, 19 C.M.R. 146, 1955 WL 3413 (1955). However, its probative effect "depends on the conditions and motive which prompted it." *Johnson,* 19 C.M.R. at 150. Having carefully reviewed the record, we find that the military judge correctly applied the law in concluding that the appellant's UA was relevant evidence.

---

5. The instruction's reference to a "beyond a reasonable doubt" standard clearly inured to the benefit of the appellant and established the law of the case. We do not express any opinion as to the accuracy of that statement of the law, leaving that issue for another day.

892

We also concur with the trial judge that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. MIL. R. EVID. 403. We believe that the risk of unfair prejudice was low and that any unfair prejudice that accrued was cured by the judge's instructions. The military judge twice instructed the members that they could not hold the guilty plea to unauthorized absence against the appellant. Moreover, they could not hold the substance of the UA offense against him in deliberating on the other charges unless they found *beyond a reasonable doubt* that the appellant went UA because of the pending rape charge and investigation. Given those instructions, we think it is just as likely that the members would have found that the UA was not tied to the rape charges. This assignment of error is without merit.

### V. Admission of the Appellant's Videotaped Police Statement

█ The appellant next contends that the military judge, Captain Leachman, erred by admitting Prosecution Exhibit 14, a six-minute videotape extract of an 18 June 1997 interrogation of the appellant. The initial interrogation occurred on 13 June 1997. The defense counsel filed a motion to suppress this evidence on grounds of failure to warn the appellant of his rights under Article 31(b), UCMJ, 10 U.S.C. § 831(b). Appellate Exhibit V. When Captain Leachman first asked about litigation of this motion, the defense counsel asked the military judge to "table" it. Apparently, the defense had second thoughts about the advisability of showing the videotape to the members. Record at 12. Later, when the new military judge, Captain Hunt, asked if there were any other motions, the defense declined to raise the motion. Record at 74. Finally, the defense counsel specifically stated on two occasions that there was no objection to the showing of the videotape. Record at 183, 222. We find that the appellant waived this issue. MIL. R.EVID. 103(a).

█ Having found waiver, we will determine whether the military judge's admission of the exhibit constituted plain error. We may reverse a conviction for plain error only if (1) there was error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial right of the appellant. *United States v. Kho*, 54 M.J. 63, 65 (2000). The general rule is that if warnings are given properly the first time and there is a continuance of the interrogation, separate warnings are not needed. *United States v. Jefferson*, 44 M.J. 312 (1996). We first note that the appellant does not contend that the rights warning at the initial interrogation of 13 June 1997 was deficient. In determining whether there was a continuous interrogation from 13 June to 18 June, the date of the videotaped interrogation, we consider the following questions: (1) Were the same charges being investigated at both interrogations? (2) Were the investigators the same at both interrogations? (3) Was there any indication that the appellant had forgotten or was otherwise unaware of his right to remain silent? (4) Was the appellant permitted to return to his duties after the first interrogation? (5) Had too much time passed since the first interrogation? *See Jefferson*, 44 M.J. at 322; *United States v. Schultz*, 19 C.M.A. 311, 315, 41 C.M.R. 311, 315, 1970 WL 7335 (1970).

█ The record shows that the charges and the investigators were the same at both interrogations. There is nothing to indicate that the appellant had forgotten or was otherwise unaware of his right to remain silent. The appellant was permitted to return to his duties after the first interrogation. Under these circumstances, we do not view a five-day hiatus in the interrogation as fatal. We find that there was no error. Even if we were to find error, it is not plain or obvious, particularly in light of the case law in this subject area. See, e.g., *Jefferson*, 44 M.J. at 322 (four days considered continuous); *United States v. Radford*, 17 C.M.R. 595, 602, 1954 WL 2680 (AFBR 1954)(40 days considered continuous). Lastly, after viewing the videotape and considering the entire record, we find that the appellant suffered no prejudice. As the defense counsel obviously decided in offering no objection, the six-minute videotape extract added nothing to the Government's case, but actually buttressed the defense theory of consent. The assignment of error has no merit.

893

## VI.  Conclusion

We have carefully considered the remaining assignments of error, including the argument that the evidence was legally and factually insufficient, and find them to be without merit.  The findings and sentence are affirmed.

Chief Judge LEO and Senior Judge ANDERSON concur.