**UNITED STATES, Appellee,**

v.

**Joie L. GILES, Operations Specialist Third Class, U.S. Navy, Appellant.**

No. 97–0051.
Crim.App. No. 95–0903.

U.S. Court of Appeals for the Armed Forces.

Argued Jan. 12, 1998.

Decided March 24, 1998.

For Appellant: *Lieutenant (junior grade) Robert Attanasio,* JAGC, USNR (argued); *Lieutenant James P. Benoit,* JAGC, USNR.

For Appellee: *Captain Paul D. Kovac,* USMC (argued); *Colonel Charles Wm. Dorman,* USMC, *Commander D.H. Myers,* JAGC, USN, *Major William H. Borden,* USMCR, and *Captain Michael D. Carsten,* USMC (on brief); *Major Stephen Finn,* USMC.

*Opinion of the Court*

CRAWFORD, Judge:

Contrary to her pleas, appellant was found guilty by a general court-martial composed of officer and enlisted members of attempt to possess LSD with intent to distribute and attempt to distribute LSD, in violation of Article 80, Uniform Code of Military Justice, 10 USC § 880. Appellant was sentenced to a bad-conduct discharge and reduction to the lowest enlisted grade. The convening authority approved the sentence as adjudged. The Court of Criminal Appeals affirmed the findings and the sentence in an unpublished opinion.

On appeal, this Court specified the following issue:

WHETHER THE MILITARY JUDGE ERRED BY DENYING TRIAL DEFENSE COUNSEL'S CHALLENGE FOR CAUSE AGAINST A MEMBER BASED ON AN INELASTIC OPINION CONCERNING AN APPROPRIATE SENTENCE UNDER RCM 912.

We hold that the military judge abused his discretion when he denied the challenge for cause against Lieutenant (LT) J.

*Facts*

During group *voir dire*, trial defense counsel asked, "Do any of you feel that an appropriate punishment for any offense involving drugs should include automatically a bad-conduct discharge or dishonorable discharge?" LT J, along with four others, answered affirmatively. On individual *voir dire*, LT J's attitude toward sentencing became even clearer.

**Questions by the prosecution:**

Q. Lieutenant J, I noticed that you indicated when it was asked concerning the appropriate punishment. You indicated that a BCD was the appropriate punishment in a drug case. Would you be able to listen to all the evidence presented here today before making your decision concerning a sentence?

A. Yes.

Q. Would you consider the maximum punishment all the way down to the minimum punishment which is no punishment when—

MJ: If it were necessary that we get to sentence.

MBR (LT J): Yes.

\* \* \*

**Questions by the defense:**

\* \* \*

Q. If sentencing becomes necessary in this case, during the group *voir dire* I asked a question, "If sentencing were to become necessary pertaining to punitive discharge from the service," your response was, "Yes, a BCD or a dishonorable discharge would be mandatory" in your eyes. Is that correct?

A. That is correct.

Q. So you feel that regardless of the circumstances, if a person is found guilty of drug misconduct that person must necessarily be separated, discharged from the navy?

A. If the person is found guilty, yes.

Q. No ands, ifs or buts?

A. Not in my personal opinion. And I would consider all the facts and all the extenuating and mitigating circumstances. But my personal opinion is anybody that is

convicted of dealing drugs or trafficking drugs or things of that nature that I personally feel that they should be discharged from the Navy, dishonorably or through bad-conduct discharge.

Q. In regard to mitigating circumstances, do you feel that there are or that there could be mitigating circumstances?

A. I wouldn't say that there could not be but I have not yet heard of any that would sway my opinion on that. But I won't say that there are not any mitigating circumstances that could not exist. I have yet to hear them though.

\* \* \*

**Questions by the prosecution:**

\* \* \*

Q. Will you listen to all the evidence presented if sentencing becomes a factor in this case before making your decision whether you want to award a BCD or not?

A. Yes. But to clarify BCD or dishonorable. I am necessarily set on a bad-conduct discharge. But as I stated, I will listen to all the evidence and witnesses and all the circumstances, however, before I make my decision.

\* \* \*

**Questions by the defense:**

Q. Just to clarify again, getting back to this question in regards to mandatory discharge from the service if you were to find a person guilty. If you were to find a guilty verdict here today, would you feel that you must necessarily discharge the defendant from the Navy?

A. I will answer that yes with the qualification that I have—As I stated earlier, I have yet to hear of any circumstances that would lead me to reconsider my position on that. Not to say that they don't exist, you know. My position is that there is a possibility that something could happen or be some set of circumstances that might change my opinion on that but as of yet I have not either heard or experienced that. And as a result, I feel that anybody who is convicted in the naval service of distributing or selling illegal substances in my opinion you should be dishonorably discharged

or discharged with a bad-conduct discharge.

Trial defense counsel challenged LT J for having an inelastic attitude toward sentencing and because he was a classmate of trial counsel's at the Naval Academy. The military judge denied the challenge for cause. In denying the challenge for cause, the military judge, without further questioning, dismissed the association of the member with trial counsel and then contrasted this member's responses with those of another member.

[T]he rules don't require that a member not have some idea of what they thought the sentence might be appropriate [sic]. That's one of the reasons we show them the charges, and he clearly indicated that he would, in fact, consider all the possible range of punishments from no punishment to the maximum punishment authorized and, as opposed to Petty Officer T, clearly indicated that the consideration was a consideration of the various punishments, not just simply a consideration as Petty Officer T indicated, "Yeah, I'll listen to all the evidence." Lieutenant J did not indicate to me an inelastic attitude concerning punishments. He, in fact, indicated that he would consider all the punishments as well as all the evidence as opposed to the situation with Petty Officer T.

Similarly, in denying a challenge against Chief B, the military judge stated, "Again, I believe the responses from the Chief were the same generically as the responses of Lieutenant J, that indicated perhaps a leaning towards a discharge but an open mind and a willingness to consider the full range of punishments...."

Trial defense counsel used his one peremptory challenge against LT J. Trial defense counsel then preserved the issue by noting on the record that he would have used his peremptory challenge for another member if the challenge for cause against LT J had been granted. *See* RCM 912(f)(4), Manual for Courts–Martial, United States (1995 ed.).

## Discussion

■ Appellant asserts that the military judge's denial of defense counsel's challenge for cause against LT J was improper under RCM 912(f)(1)(N), which provides a cause for challenge "in the interest of having the court-martial free from substantial doubt as to legality, fairness, and impartiality." The Discussion following this catch-all provision lists examples of circumstances which would trigger it, including where a potential member "has an inelastic opinion concerning an appropriate sentence for the offenses charged."

Appellant relies on LT J's statement during *voir dire* that that any distribution of drugs warranted a punitive discharge. Appellant further contends that any statements made by LT J during *voir dire* to the contrary were only *"pro forma* and parroting responses to leading questions asked by the military judge and trial counsel." Final Brief at 5.

The Government notes that the standard of review is whether there was a "clear abuse of discretion" and emphasizes that appellate courts tend to give great deference to military judges because of their ability to observe the member's demeanor during *voir dire.* Answer to Final Brief at 2–3. The Government further argues that a potential member is not automatically disqualified for his candor and that the true test is "whether the member's personal bias is such that it will not yield to the evidence presented and the judge's instructions." *Id.* at 3–4, citing *United States v. McLaren,* 38 MJ 112, 118 (CMA 1993), *cert. denied,* 510 U.S. 1112, 114 S.Ct. 1056, 127 L.Ed.2d 377 (1994); *United States v. Reynolds,* 23 MJ 292, 294 (CMA 1987). The Government contends that LT J rehabilitated himself in *voir dire* and satisfied this true test.

This Court has clearly and repeatedly stated the standard for a challenge for cause is the following: "[M]ilitary judges must follow the liberal-grant mandate in ruling on challenges for cause, but we will not overturn the military judge's determination not to grant a challenge except for a clear abuse of discretion in applying the liberal-grant mandate." *United States v. White,* 36 MJ 284, 287 (1993); *see McLaren,* 38 MJ at 118 ("At the

same time, we have recognized the military judge's superior position in evaluating the demeanor of court members; therefore, we have granted great deference on appeal to, and will not reverse, a ruling on a challenge for cause absent a clear abuse of discretion.").

As was stated in *United States v. Davenport,* 17 MJ 242, 244 (CMA 1984):

What we have sought to guard against is a member who harbors such bias toward the crime that he, based upon the facts as they develop and the law as it is given by the military judge, cannot put his personal prejudices aside in order to arrive at a fair sentence for the accused.

■ This Court has recognized that "a court member's response to 'artful, sometimes ambiguous, inquiries from counsel' does not require that the military judge grant a challenge for cause." *United States v. Bannwarth,* 36 MJ 265, 267 (1993), quoting *United States v. Tippit,* 9 MJ 106, 108 (CMA 1980). "[A]n unfavorable inclination toward an offense is not automatically disqualifying." *Bannwarth,* 36 MJ at 268, citing *U.S. v. Reynolds, supra,* and *United States v. Cosgrove,* 1 MJ 199 (CMA 1975). "The burden of establishing that grounds for a challenge exist is upon the party making the challenge." RCM 912(f)(3).

We hold that the military judge clearly abused his discretion in denying the challenge, because LT J clearly demonstrated an actual bias by his inelastic attitude toward sentencing. Although he indicated that he could consider the evidence and the circumstances of the case, LT J repeatedly stated that he believed a bad-conduct discharge or a dishonorable discharge was necessary for any servicemember who distributed drugs, and he had not heard of or experienced any circumstances where a punitive discharge would not be appropriate. Trial counsel's

attempts at rehabilitation were stymied by LT J who consistently reasserted his belief that all drug dealers in the military should receive a punitive discharge. Thus, denial of the defense challenge for cause against LT J was an abuse of discretion.

### Decision

The decision of the United States Navy–Marine Corps Court of Criminal Appeals is reversed. The findings and sentence are set aside and the record of trial is returned to the Judge Advocate General of the Navy. A rehearing may be ordered.

Chief Judge COX and Judges GIERKE and EFFRON concur.

SULLIVAN, Judge (dissenting):

The critical question before the military judge was whether Lieutenant Jones had an inelastic attitude towards sentencing. *See* RCM 912(f)(1)(N) Discussion, Manual for Court–Martial, United States (1994 ed.).* Thus, this is a question of actual bias. *See United States v. McLaren,* 38 MJ 112, 118 (CMA 1993); *United States v. Bannwarth,* 36 MJ 265 (1993); *United States v. Reynolds,* 23 MJ 292 (CMA 1987); *United States v. Davenport,* 17 MJ 242 (CMA 1984). The use of the "clearly demonstrated" standard in actual-bias cases overturns our past precedent without stating any reason for overturning our prior standard of due deference to the trial judge who observed the juror. *Cf. United States v. Lavender,* 46 MJ 485 (1997); *United States v. Minyard,* 46 MJ 229 (1997). On appeal, we are looking at the cold record. At trial, the judge was looking at a warm-blooded juror and hearing the tone and sincerity of the answers to the *voir dire* questions. I would defer to the judgment of the military judge in this case. Therefore, I dissent.

* Appellant's court-martial was tried on September 23, 1994.