UNITED STATES, Appellee,

v.

Patrick B. ROLLE, Staff Sergeant, U.S. Army, Appellant.

No. 98–0656.
Crim.App. No. 9601336.

U.S. Court of Appeals for the Armed Forces.

Argued Dec. 9, 1999.

Decided July 17, 2000.

GIERKE, J., delivered the opinion of the Court, in which CRAWFORD, C.J., and EVERETT and COX, S.JJ., joined. SULLIVAN, J., filed an opinion concurring in part and in the result.

For Appellant: *Captain Blair T. O'Connor* (argued); *Colonel John T. Phelps, II, Colonel Adele H. Odegard,* and *Captain Kirsten V. Campbell–Brunson* (on brief); *Major Holly S.G. Coffey, Captain Jodi E. Terwilliger–Stacey,* and *Captain Norman R. Zamboni.*

For Appellee: *Captain Troy A. Smith* (argued); *Colonel Russell S. Estey* and *Major Patricia A. Ham* (on brief).

Judge GIERKE delivered the opinion of the Court.

A special court-martial convicted appellant, pursuant to his pleas, of wrongful use of cocaine, in violation of Article 112a, Uniform Code of Military Justice, 10 USC § 912a. The adjudged and approved sentence provides for a bad-conduct discharge and reduction to the lowest enlisted grade. The Court of Criminal Appeals affirmed in an unpublished opinion.

This Court granted review of the following issues:

## I

WHETHER THE MILITARY JUDGE ERRED BY DENYING SSG ROLLE'S CAUSAL CHALLENGE AGAINST TWO (2) PANEL MEMBERS WHO STATED THEY COULD NOT CONSIDER THE FULL RANGE OF PUNISHMENT, TO INCLUDE NO PUNISHMENT.

## II

WHETHER THE APPLICATION OF ARTICLE 57(a), 10 USC § 857(a), VIOLATES THE *EX POST FACTO* CLAUSE OF THE CONSTITUTION WITH RESPECT TO APPELLANT WHERE THE OFFENSE OF WHICH APPELLANT WAS CONVICTED OCCURRED BEFORE APRIL 1, 1996, WHERE APPELLANT WAS SENTENCED ON AUGUST 8, 1996, WHERE THE CONVENING AUTHORITY DID NOT TAKE ACTION ON APPELLANT'S CASE UNTIL NOVEMBER 14, 1996, AND WHERE THE ADJUDGED COURT–MARTIAL SENTENCE INCLUDED A BAD–CONDUCT DISCHARGE AND REDUCTION TO THE GRADE OF PRIVATE E–1. *United States v. Gorski*, 47 MJ 370 (1997).

For the reasons set out below, we hold that the military judge did not abuse his discretion by denying the challenges for cause. Issue II requires a remand to the court below.

### Factual Background

The court-martial was composed of officer and enlisted members. The first granted issue involves two members, Command Sergeant Major (CSM) Legoas and Sergeant First Class (SFC) Walder. During general *voir dire* by trial counsel, all members expressed their willingness and ability to be "fair, impartial, and open-minded in [their] consideration of an appropriate sentence." During general *voir dire* by defense counsel, all members acknowledged that a guilty plea demonstrates acceptance of responsibility. All members agreed with defense counsel "that a federal conviction is in and of itself punishment" that would foreclose "many opportunities and privileges." No member felt obliged to adjudge a punitive discharge, confinement, or reduction in grade because of the nature of the offense. All members understood that "with the judge's instructions [they were] authorized to adjudge no punishment." Only one member expressed inability to follow such an instruction, and he was successfully challenged for cause.

The defense concern about the sentencing attitudes of the members was triggered by trial counsel's question whether the members could let appellant stay in the military "irrespective of whether [they thought] he could have a successful career afterwards." CSM Legoas responded, "I wouldn't [let him stay]." Upon further questioning, CSM Legoas agreed that what he meant was that he did not think appellant could have a successful career.

Defense counsel picked up on that cue and asked whether the members could, "on the judge's instruction, come back and keep [appellant] in the United States Army?" Four members, including CSM Legoas, indicated they would have a problem with that. One member responded, "It's my opinion that as a result of this action Sergeant Rolle's career is over and we should allow it to be over. That's my opinion." The military judge later sustained a challenge for cause against that member.

CSM Legoas then spontaneously directed the following comment to defense counsel:

> You know, due to your question and what the judge has just said in there. I think they're two different things. You are asking whether he should be retained in the Army and we should support that irregardless of what the judge just said, you know, it's just a matter of how we're going—if we're going to punish him is going to be through a discharge or an administration elimination from the Army.

CSM Legoas concluded his spontaneous statement by saying that he could not sup-

port retaining someone in the Army who would not enforce Army rules.

During individual *voir dire* of CSM Legoas, the following colloquy occurred:

DC: Near the end of my questioning of the members, I asked do you all understand that through the judge's instructions you are authorized to adjudge no punishment in this case.

MBR (CSM Legoas): Right.

DC: And you indicated that there may be some problem. Can you elaborate please, sir?

MBR (CSM Legoas): An individual that admits guilt through some—some criminal act cannot be going unpunished although he may have a lot of mitigating circumstances, et cetera, he already admitted guilt. And by that fact in my opinion that I already know—

DC: So in your mind guilt equals punishment? Is that a safe assessment?

MBR (CSM Legoas): Could be. Like I say, you know I would take in consideration all the mitigating circumstances, but when somebody has admitted guilt, I am inclined to believe that probably there is some punishment in order there.

DC: And you say "inclined", are you predisposed? I mean, do you feel that he's guilty now we must punish him?

MBR (CSM Legoas): Something must show me, must show me as a mitigating circumstance perhaps you know that the guy does not deserve punishment, but I very seriously doubt that he will go without punishment.

DC: So, maybe short of bringing the Pope forward, it's going to be very hard for you to—

MBR (CSM Legoas): I think—yes sir; it would be.

DC: I have nothing further sir.

MJ: Captain Schuett?

TC: Yes, I do.

TC: Sergeant Major, when the judge instructs if you become a member of the panel that you're to consider all punishment up to including no punishment. Will you be able to follow that instruction?

MBR (CSM Legoas): Yeah, I would be able to follow that, sir. I've got to be fair as much as I can be, sir.

TC: Right. So even though that you know that yeah, in a part of your mind just like every other human if somebody admits guilt you know you think you know the natural reaction you think punishment. Colonel Dean says to you Sergeant Major you need to consider up to and including no punishment you can go back in—

MBR (CSM Legoas): That is correct, sir.

TC: —there and if the circumstances warrant you can vote for it?

MBR (CMS Legoas): I'll never exclude that possibility that the individual could not go unpunished, sir.

TC: Thank you. I have nothing further at this time.

DC: Sir, just a follow-up.

DC: Sergeant Major, it's not so much what Colonel Dean instructs to, it's what you inside can do.

MBR (CSM Legoas): Same way, sir. It is the same way, sir. For all fairness, I'd have to consider everything. The man can go—may go unpunished if, you know, if the evidence is that strong, but right now my disposition is somebody that admits guilt, perhaps punishment is in order.

DC: So now we have to convince you that no punishment is warranted?

MBR (CSM Legoas): That's correct, sir.

During individual *voir dire* of SFC Walder, the following colloquy occurred:

DC: Sergeant Walder, I just have a few questions to follow-up from before. One of the questions that I asked all the members was do all of you understand that through the judge's instructions you're authorized to adjudge no punishment in this case. And, your answer indicated that you could not. Could you please elaborate?

MBR (SFC Walder): Now, I understand that question as being—could you repeat that?

DC: Sure.

MBR (SFC Walder): Repeat that again, sir.

DC: Part of the punishment or the scope in the punishment can go from max of six

months, reduction to lowest enlisted grade, six months confinement, forfeiture of pay of two-thirds, or to the other end of the spectrum: no punishment at all. Okay? Can you give that kind of a sentence in this case?

MBR (SFC Walder): Can I give the sentence as far as no punishment at all?

DC: That's correct.

MBR (SFC Walder): No, I can't sir.

DC: You cannot. You've excluded that all together?

MBR: (SFC Walder): Ah, I haven't excluded it, sir. He, based upon him, he said that he was guilty, admitted as being guilty. Can I consider it? No, because basically it seems like facts have been presented to me because he evidentially said that he was guilty. And, I can't consider not punishing him at all, sir.

DC: I have nothing further, sir.

MJ: Go ahead.

TC: I have a few questions for you. How you doing, Sergeant Walder?

MBR (SFC Walder): Fine, sir.

TC: You have heard the fact that he has plead guilty—

MBR (SFC Walder): Yes, sir.

TC: —but .we have yet to present to you the facts surrounding this guilty plea—

MBR (SFC Walder): All right, sir.

TC: If the judge instructs you, if you're a member of the panel, that you have to consider all the evidence. All the evidence is getting ready to come in. Now you have to consider it all the way up and down. Can you consider it all the way up and down if there is some fact that comes out during the presentation of evidence that will lead you to believe okay, yeah he's technically guilty, but I don't want to punish him? Can you consider that if some evidence comes out because the judge will instruct you to look at all the evidence, can you consider no punishment at that time?

MBR (SFC Walder): Depending on the evidence; yes, sir.

TC: Thank you. I have nothing further.

DC: Just one question.

DC: So then after you hear everything in your—what's inside you and your con-

scious, you can say, Sergeant Rolle, no punishment?

MBR (SFC Walder): I can consider it, sir, but I—there's a thin line that I cannot punish him at all.

DC: Explain the thin line to me please?

MBR (SFC Walder): Knowing that he already admitted that he was guilty, sir. Yes, I can consider it, but would that evidence weigh in my decision not to punish him, no. No, it wouldn't, sir.

DC: So again you have your mind made up that you cannot?

MBR (SFC Walder): Yes, sir.

DC: Give no punishment?

MBR (SFC Walder): That's right.

DC: Nothing further.

TC: Your Honor?

MJ: Go ahead.

TC: I think we're lawyering to be perfectly honest. I mean I think that you know Sergeant Walder says one thing to me and we get up and say different words you know. Let me just ask you this one last time is, if all the evidence presented and something does come in, you know whatever it could be that would lead you to believe that okay, he doesn't deserve punishment you said earlier and I would just like you to clarify it again. Could you give Staff Sergeant Rolle no punishment?

MBR (SFC Walder): Could I give him—no, sir.

TC: Okay, so even if something came in, even if a piece of evidence that led you to believe—

MBR (SFC Walder): No, sir.

TC: Okay. Thank you.

The military judge denied the challenges for cause against CSM Legoas and SFC Walder. The defense then used its one peremptory challenge against SFC Walder.

The defense case on sentencing focused on appellant's service record and potential for rehabilitation. Five noncommissioned officers—a sergeant, two staff sergeants, a sergeant first class, and a first sergeant—testified on his behalf. In an unsworn statement, appellant expressed remorse and shame for

his use of cocaine. He told the court members that, based on his misconduct, he was not sure that he was worthy to wear the uniform again.

In his sentencing argument, defense counsel emphasized appellant's remorse and his potential for rehabilitation. He argued that "[a] federal conviction, sitting by itself without getting wrapped around the axle about the no punishment issue," is punishment. After pointing out that the sentence worksheet listed a range of punishments from "no punishment," the least severe, to confinement and punitive discharge, the most severe, he asked the court members not to discharge or confine appellant. He did not ask the court members to impose a sentence to no punishment.

### Discussion

Appellant asserts that the military judge abused his discretion in applying the liberal-grant mandate, because CSM Legoas and SFC Walder indicated that they would not be able to consider a sentence to no punishment. The Government argues that the military judge did not abuse his discretion because neither member expressed an inelastic attitude toward sentencing.

RCM 912(f)(1)(N), Manual for Courts-Martial, United States (1995 ed.),* requires that a member be removed for cause if that member "[s]hould not sit as a member in the interest of having the court-martial free from substantial doubt as to legality, fairness, and impartiality." Under this rule, a member is disqualified if he or she "has an inelastic opinion concerning an appropriate sentence for the offenses charged." RCM 912(f)(1)(N), Discussion. RCM 912(f)(3) provides that "[t]he burden of establishing that grounds for a challenge exist is upon the party making the challenge."

■ On appeal, a military judge's ruling on a challenge for cause is given "great deference." *United States v. Rome*, 47 MJ 467, 469 (1998). We will reverse only for a "clear abuse of discretion." *United States v. White*, 36 MJ 284, 287 (1993).

* The current version is unchanged.

■ Predisposition to impose some punishment is not automatically disqualifying. *United States v. Jefferson*, 44 MJ 312, 319 (1996); *United States v. Tippit*, 9 MJ 106, 107 (CMA 1980). "[T]he test is whether the member's attitude is of such a nature that he will not yield to the evidence presented and the judge's instructions." *United States v. McGowan*, 7 MJ 205, 206 (CMA 1979). Recently, in *United States v. Schlamer*, 52 MJ 80, 93 (1999), we observed that "[a]n inflexible member is disqualified; a tough member is not."

The issue in this case arises from questions propounded to the members in a vacuum, before they heard any evidence or received instructions from the military judge. In *United States v. Heriot*, 21 MJ 11, 13 (CMA 1985), this Court stated that it was "sympathetic with the plight of court-martial members who on *voir dire* are asked hypothetical questions about the sentence they would adjudge in the event of conviction." We expressed reluctance "to hold that a prospective member who is not evasive and admits to harboring an opinion that many others would share—such as that a convicted drug dealer should not remain a noncommissioned officer or should be separated from the armed services—must automatically be excluded if challenged for cause." *Id.* In *United States v. Reynolds*, 23 MJ 292, 294 (CMA 1987), this Court held that neither side "is entitled to a commitment" during *voir dire* about "what they will ultimately do." *See also United States v. Rockwood*, 52 MJ 98, 114 (1999) (Gierke, J., concurring) (military judge should not have allowed *voir dire* asking for sentencing commitment).

It is not surprising that the notion of "no punishment" has bedeviled this Court for most of its history. A punishment of no punishment appears to be an oxymoron, but it is a valid punishment. In *Ball v. United States*, 470 U.S. 856, 861, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985), the Supreme Court observed that "Congress does not create criminal offenses having no sentencing component." In *United States v. Atkins*, 8

USCMA 77, 23 CMR 301 (1957), Judge Latimer dissented from a holding that a board of review had authority to affirm a sentence of "no punishment." Judge Latimer opined that a sentence of no punishment was tantamount to a pardon, which is a power reserved to the Executive branch, not the Judiciary. 8 USCMA at 80, 23 CMR at 304. In *United States v. Jones*, 14 USCMA 177, 33 CMR 389 (1963), this Court recognized that a court-martial was empowered to adjudge a sentence of no punishment. A sentence to no punishment does not automatically result if the members cannot agree on a sentence; it must be agreed to by two-thirds of the members. *United States v. Goffe*, 15 USCMA 112, 35 CMR 84 (1964). In the context of challenges for cause, the majority opinion in *United States v. McLaren*, 38 MJ 112, 119 n. * (CMA 1993), includes the following observation:

> I would have substantial misgivings about holding that a military judge abused his discretion by refusing to excuse a court member who could not in good conscience consider a sentence to no punishment in a case where all parties agree that a sentence to no punishment would have been well outside the range of reasonable and even remotely probable sentences.

■ Turning to the facts of this case, we find no clear abuse of discretion regarding the challenge of CSM Legoas. He, along with the other members, expressed no predisposition to impose a punitive discharge, confinement, or reduction in grade based on the nature of the offense. In his spontaneous statement at the end of *voir dire*, CSM Legoas distinguished between a punitive discharge and administrative separation, leaving open the question which course of action was appropriate for appellant. He expressed an inclination toward imposing some punishment but agreed that he would follow the military judge's instructions and would never exclude the possibility of no punishment. Under this Court's holdings in *Tippit* and *Jefferson*, CSM Legoas was not disqualified, even if he was predisposed to impose some punishment. Thus, we hold that the military judge did not abuse his discretion in denying the challenge for cause against CSM Legoas.

■ Turning to the challenge of SFC Walder, we also find no clear abuse of discretion. In his responses to general *voir dire*, SFC Walder, along with the other members, agreed that a federal conviction itself is punishment and that it has adverse collateral consequences. He expressed willingness to follow the military judge's instructions. Responding to trial counsel's questions, he said he would consider no punishment, "depending on the evidence." Responding to defense counsel's questions, he said that he could consider no punishment, but "there's a thin line that I cannot punish him at all." Upon further questioning, he said that he could not give no punishment.

At the outset, we note that no one asked SFC Walder what he considered to be "punishment." He had previously responded during general *voir dire* that a conviction in itself was punishment. CSM Legoas had raised the possibility of administrative separation during general *voir dire*. We cannot ascertain from this record whether SFC Walder thought that no punishment meant no conviction, no collateral consequences of a conviction, or no administrative separation. Thus, we have another case of responses to "artful, sometimes ambiguous inquiries" that do not require the military judge to grant a challenge for cause. *United States v. Bannwarth*, 36 MJ 265, 267 (CMA 1993), quoting *Tippit*, 9 MJ at 108.

Furthermore, even if SFC Walder meant what appellant asserts he meant, *i.e.*, that he could not vote for a sentence of no punishment under any circumstances, we would still find no clear abuse of discretion under the specific facts of this case. Appellant pleaded guilty after negotiating a pretrial agreement that permitted imposition of a bad-conduct discharge and a short period of confinement. In his unsworn statement, he expressed doubt about his worthiness to wear the uniform. Finally, defense counsel's closing argument asked for no discharge and no confinement, but did not ask the members to impose no punishment. Under these circumstances, the record reflects that all parties

considered no punishment to be "outside the range of reasonable and even remotely probable sentences." *United States v. McLaren, supra.*

At first blush, the facts of this case appear similar to those in *United States v. Giles,* 48 MJ 60 (1998). In both cases, a key sentencing issue at trial was whether the accused should receive a punitive discharge. In both cases, the challenged member demonstrated an inelastic attitude about an aspect of sentencing. In *Giles,* the challenged member had an inelastic attitude regarding a punitive discharge; in this case, the challenged member indicated an inelastic attitude about "no punishment," although, as indicated above, it is not clear what he thought "no punishment" entailed.

However, there are critical differences between this case and *Giles.* SFC Walder expressed no predisposition regarding the real sentencing issues in this case: whether to impose a punitive discharge and confinement. SFC Walder's attitude regarding "no punishment" had no bearing on the real sentencing issues, because the defense virtually conceded in sentencing argument that "no punishment" was "outside the range of reasonable and even remotely probable sentences."

In *Giles,* we held that the military judge abused his discretion by denying the challenge for cause. However, because of the above-described differences between this case and *Giles,* we hold that the military judge did not abuse his discretion in this case.

### Decision

The decision of the United States Army Court of Criminal Appeals with respect to Issue I is affirmed. The decision is set aside with respect to Issue II. The record of trial is returned to the Judge Advocate General of the Army for remand to that court, which will consider whether appellant is within the class of persons who are entitled to relief under *United States v. Gorski, supra.* If the court concludes that appellant is within such class, the court will refer the record to the Judge Advocate General for a determination as to the amount of relief that is warranted, if any.

SULLIVAN, Judge (concurring in part and in the result):

I concur with the majority opinion, except where it vainly attempts to square its opinion today with its opinion in *United States v. Giles,* 48 MJ 60 (1998). One looking at the facts of both cases can see that the majority's attempt to reconcile these two very similar cases is flawed with the same semantics at issue in both cases—the phrasing of artful, ambiguous questions.*

In *Giles,* the majority held that a member had an inelastic attitude towards sentencing when,

> [a]lthough he indicated that he could consider the evidence and the circumstances of the case, [he] repeatedly stated that he believed a bad-conduct discharge or a dishonorable discharge was necessary for any servicemember who distributed drugs, and he had not heard of or experienced any circumstances where a punitive discharge would not be appropriate.

*Id.* at 63. In my dissenting opinion in *Giles,* I preferred to defer to the judgment of the military judge on that question, as the majority of the court wisely does today. *Id.*

In the present case, during group *voir dire,* SFC Walder, along with all the other panel members, did not state that he felt an obligation to adjudge a punitive discharge, confinement, or grade reduction because of the nature of the offense. Moreover, he expressed an understanding that "with the

---

* More particularly, I do not agree with the majority's attempts to distinguish *Giles* on the basis that the artful questioning in that case concerned "real sentencing issues," but not in appellant's case. This unsupported view of the law was not adopted by a majority in *United States v. McLaren,* 38 MJ 112, 119 n. * (CMA 1993), and it suggests that a member's answers to no-punish-

ment questions are usually irrelevant. I disagree (*see* RCM 1002, "a court-martial may adjudge ... a sentence of no punishment"), and would note that a member's intent to not follow the judge's instructions and the law on a permissible punishment is always a relevant concern. *See United States v. McGowan,* 7 MJ 205, 206 (CMA 1979).

judge's instructions [he was] authorized to adjudge no punishment." (R. at 50, 51). When asked the same question on individual *voir dire*, SFC Walder gave the same answer. (R. at 79). After twice repeating his position, SFC Walder succumbed to the increasingly artful questioning by defense counsel and stated that he would not give no punishment. (R. at 79–80, 80–81).

This is precisely the situation, *i.e.*, inconsistent answers to repeated and increasingly complex questions by both trial and defense counsel, that lends itself best to the judgment of a trial judge who is present and observing the proceedings, rather than a distant appellate tribunal. At the end of the day, whether such artful questioning pertains to "real sentencing issues" (the majority's term) or not, does not change the wisdom of deferring to the determination of the military judge. *See United States v. Giles*, 48 MJ 60, 63 (1998) (Sullivan, J., dissenting).