UNITED STATES, Appellee

v.

Amador NIETO Jr., Corporal
U.S. Marine Corps, Appellant

No. 07-0495

Crim. App. No. 200600977

United States Court of Appeals for the Armed Forces

Argued December 12, 2007

Decided March 12, 2008

EFFRON, C.J., delivered the opinion of the Court, in which
STUCKY and RYAN, JJ., joined.  STUCKY, J., filed a concurring
opinion.  BAKER, J., filed an opinion, in which ERDMANN, J.,
joined, concurring in the result.


Counsel


For Appellant:  Major Brian L. Jackson, USMC (argued).

For Appellee:  Lieutenant Justin E. Dunlap, JAGC, USN (argued);
Commander Paul C. LeBlanc, JAGC, USN, and Lieutenant Derek D.
Butler, JAGC, USN (on brief); Captain Roger E. Mattioli, USMC.




Military Judge:  S. F. Day


THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.

United States v. Nieto Jr., No. 07-0495/MC

Chief Judge EFFRON delivered the opinion of the Court.

A special court-martial composed of officer and enlisted members convicted Appellant, contrary to his pleas, of wrongful use of cocaine, in violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a (2000). The sentence adjudged by the court-martial and approved by the convening authority included a bad-conduct discharge, confinement for three months, forfeiture of $350.00 pay per month for three months, and reduction to the pay grade of E-1. The United States Navy-Marine Corps Court of Criminal Appeals affirmed. United States v. Nieto, No. NMCCA 200600977, 2007 CCA LEXIS 113, 2007 WL 1701863 (N-M. Ct. Crim. App. Apr. 5, 2007) (unpublished).

On Appellant's petition, we granted review of the following issue:

> WHETHER THE LOWER COURT ERRED WHEN IT HELD THAT THE MILITARY JUDGE DID NOT COMMIT PLAIN ERROR WHEN HE PERMITTED THE TRIAL COUNSEL TO ASK HYPOTHETICAL VOIR DIRE QUESTIONS THAT PRESENTED THE MEMBERS WITH SUCH DETAILED FACTS ABOUT APPELLANT'S CASE THAT THE TRIAL COUNSEL WAS IN EFFECT COMMITTING THE MEMBERS TO RETURN A VERDICT OF GUILTY PRIOR TO THE PRESENTATION OF EVIDENCE, ARGUMENT, AND INSTRUCTIONS.

In the present case, trial defense counsel did not object to the questions posed to the members by the prosecution during voir dire. For the reasons set forth below, we conclude that the military judge did not commit plain error in permitting

2

trial counsel to ask specific questions under the circumstances of this case.

## I.  TRIAL PROCEEDINGS

After assembly of the court-martial, and prior to the exercise of challenges against members of the panel, the military judge provided an opportunity for voir dire examination of the panel members.  See Rule for Courts-Martial (R.C.M.) 912(d).  The voir dire reflected the parties' anticipation that the prosecution would rely primarily on a positive urinalysis test, and that the defense would rely primarily on Appellant's good military character and would seek to cast doubt on the reliability of the urinalysis procedure.

### A.  GROUP VOIR DIRE

At the outset, the military judge asked a series of questions during group voir dire to ensure that the members would assess urinalysis evidence in a neutral manner, with particular emphasis on ensuring that the members would not automatically equate a positive urinalysis result with guilt.  The military judge then permitted each party to question the members.  See R.C.M. 912(d).

Trial counsel asked a number of questions during group voir dire related to urinalysis and military character, as reflected in the following excerpts from the record:

Does any member believe that an accused should not or cannot be convicted of wrongful use of cocaine based on a urinalysis alone?

Negative response from all members.

. . . .

Do any members have any negative opinions about the urinalysis testing program?

Negative response from all members.

Do any members disagree with the use of a urinalysis to determine the presence of contraband substance in the body?

Negative response from all members.

If the government proves to you beyond a reasonable doubt that drugs were present in the accused['s] urine[,] would you be capable of inferring that he knowingly used those drugs that were found there? . . .

Affirmative response from each of the members.

. . . .

Would you be able to convict a Marine if the evidence supports a conviction even if the Marine has an otherwise unblemished service record?

Affirmative response from each of the members.

Does any member believe that a Marine with a good record cannot commit a violation of the UCMJ?

Negative response from all members.

. . . .

Does any member believe that evidence [of] the accused['s] good military character by itself is sufficient to out weigh [sic] other evidence of the accused's guilt?

Negative response from the members.

. . . .

Do the members understand that you all determine
how much weight, if any[,] to give to the
evidence of good military character that is
presented by the defense in determining the
accused's guilt or innocence, if that is
presented?

Affirmative response from the members.

Does any member believe that any technical error
in the collection process, no matter how small[,]
means that the urinalysis is per se invalid?

Okay affirmative response from each of the
members.

Defense counsel asked a series of questions regarding urinalysis procedures during which all the members responded in the negative as to whether they believed the urinalysis program was infallible, responded in the affirmative to the proposition that "zero tolerance" related to mandatory processing rather than automatic discharge, and responded in the negative as to whether a positive urinalysis test "is the absolute proof that an individual knowingly used drugs[.]"

B. INDIVIDUAL VOIR DIRE

The record reflects detailed questioning of the members during individual voir dire, including a number of interchanges between trial counsel and individual members pertinent to the present appeal.

The following exchange occurred during the voir dire of

Chief Warrant Officer 3 (CWO3) M:

TC:  You believe that any type of deviation from the SOP automatically invalidates that[,] there is no weight to be assigned to it, you didn't follow procedures so therefore you can't rely on it, it is unreliable evidence?

MBR (CWO3 [M]):  Any time you have a gap in the chain, sir[,] it makes it a weak link.  So it is possible that any part of that gap could have been tampered with.  I would like to hear the evidence of why there is a gap there, and based off of that evidence I could make a better determination of whether it is valid or not valid.

TC:  Okay.  So you are talking about custody issues when you talk about the collection process?

MBR (CWO3 [M]):  Yes, sir.

TC:  What if it was something else[?]  What if there was a particular space where someone didn't initial, where other wise [sic] they would have? Is that the sort of procedural error that you think would invalidate a urinalysis test per se?

MBR (CWO3 [M]):  Only if it is a standard operating procedure for that point in time, yes, sir.

TC:  So if there were some body [sic] like the coordinator who was supposed to initial the bottle, and he didn't, that would necessarily mean that you couldn't rely on that sample that was collected because he didn't fulfill the duties he should have?

MBR (CWO3 [M]):  Yes, sir.

Trial counsel asked similar questions during the individual voir dire of CWO2 C. In particular, the following exchange occurred:

> TC: [W]ould you be able to look at and assess if there were any deviations from the SOP, and weigh them to factor whether or not this is a reliable test that we have in this case?
>
> MBR (CWO2 [C]): Yes, sir.
>
> TC: And so it wouldn't necessarily be per se invalid if the coordinator didn't put his initials on the bottle[,] let's say. If it came back to the coordinator [and] the accused brought it back to the table, but the coordinator didn't put his initials on the bottle before it went back into the box. Would that be a violation that you couldn't over look [sic]? No matter what[,] that is an invalid test in your mind?
>
> MBR (CWO2 [C]): In that case with the initials, no.

During the individual voir dire of Staff Sergeant (SSgt) R and Corporal (Cpl) M, trial counsel asked similar questions regarding urinalysis procedures. Both members agreed with the statement that such a deviation would not necessarily render the test invalid.

Sergeant (Sgt) Z offered a different response, as reflected in the following colloquy:

> TC: [Is it] your opinion [that] any violation of the SOP regarding the collection process, no matter what it is[,] that automatically means that you can't rely on the results of that test?
>
> MBR (Sgt [Z]): Yes, sir.

7

TC:  Would it make any difference what sort of violation we are talking about?

MBR (Sgt [Z]):  I believe that is something that seriously needs to be perfect, sir.

TC:  All right.  So if that included a coordinator, for instance, not initialing the bottle when he should have, that, in your mind, is a deviation that seriously jeopardizes the reliability of the results?

MBR (Sgt [Z]):  Yes, sir.


Subsequently, in response to questioning by defense counsel, Sgt Z agreed that he could consider all the evidence, if so instructed, before making a decision regarding the impact of an error in the collection process.

During individual voir dire questioning, Cpl L expressed a similar belief that a coordinator's failure to initial a urine bottle would invalidate a positive urinalysis test.  After asking several unrelated questions, trial counsel returned to the issue of deviations in urinalysis procedures:

TC:  If the evidence showed that the accused is the one who brought back a bottle and he put the label on the bottle himself, and verified it was his social security number, that sort of thing, and he put his initials on that label, and then he himself put the tape on the bottle and he initialed the top of the tape, and he put the sample into the box himself and took out his ID card.  Would the fact that the coordinator in that process hadn't picked up the bottle himself and initial [sic] it. . . . be enough to . . . throw out the results of that test, that couldn't support a conviction, you couldn't find the

accused guilty if that was the error that
occurred here?  Is that true or not?

MBR (Cpl [L]):  Not true because he signed for
it.

TC:   The accused?

MBR (Cpl [L]):  The accused signed saying that it
was his urine, sir.

In addition, Cpl L agreed that he would consider all the
evidence, notwithstanding an error in the collection procedures.

## C.  CHALLENGES

The prosecution challenged CWO3 M and Sgt Z for cause on
the grounds that their responses indicated an inflexible
attitude with respect to processing errors, among other grounds.
After considering defense objections to the challenges, the
military judge granted the prosecution's challenge as to Sgt Z
and denied it as to CWO3 M.  Subsequently, the prosecution
exercised a peremptory challenge against CWO3 M.

Only two members were challenged by the defense, both of
whom were removed from the panel.  The military judge granted
the defense challenge to Cpl M on the grounds of her personal
and professional relationship with various witnesses, and the
defense exercised a peremptory challenge against Cpl L.

## II.  DISCUSSION

Before this Court, Appellant contends that the prosecution improperly sought to obtain from the panel members a commitment to convict Appellant based upon a hypothetical set of facts, that the commitment questions violated his right to be tried by an impartial panel, and that the military judge erred by permitting these questions.  In the absence of objection by the defense at trial, we apply a plain error standard of review. United States v. Moran, 65 M.J. 178, 181 (C.A.A.F. 2007).  To establish plain error, an appellant bears the burden of demonstrating "(1) an error was committed; (2) the error was plain, clear, or obvious; and (3) the error resulted in material prejudice to an appellant's substantial rights."  Id. (citing United States v. Powell, 49 M.J. 460, 463-65 (C.A.A.F. 1998)); see Article 59(a), UCMJ, 10 U.S.C. § 859(a) (2000).

Voir dire provides an opportunity to explore whether a member possesses partiality or otherwise is subject to challenge, and the military judge has broad discretion in the conduct of voir dire.  See United States v. Belflower, 50 M.J. 306, 309 (C.A.A.F. 1999); United States v. Jefferson, 44 M.J. 312, 318-19 (C.A.A.F. 1996); R.C.M. 912(d) Discussion.  As a general matter, hypothetical questions provide a permissible means of exploring potential grounds for challenge.  See United

States v. Reynolds, 23 M.J. 292, 293-94 (C.M.A. 1987); United States v. Heriot, 21 M.J. 11, 12-14 (C.M.A. 1985).

Although this Court has addressed challenges for cause based upon answers provided by prospective members to hypothetical questions during voir dire, see, e.g., Reynolds, 23 M.J. at 294, we have not heretofore addressed the scope of permissible questioning in this regard. Among the few courts that have addressed this question, a number have held that certain hypothetical questions are impermissible if they seek to obtain a commitment from jurors to agree to decide the case in a particular way upon a hypothetical set of facts. See, e.g., Hobbs v. Lockhart, 791 F.2d 125, 129-30 (8th Cir. 1986); Hutcheson v. State, 213 S.W.3d 25, 32 (Ark. Ct. App. 2005); State v. Henderson, 574 S.E.2d 700, 705-06 (N.C. Ct. App. 2003); Thompson v. State, 2007 OK CR 38, ¶ 33, 169 P.3d 1198, 1209. A number of other courts have adopted a broader prohibition, precluding questions that ask jurors to commit themselves to resolving a particular aspect of the case in a specific way based upon a hypothetical set of facts. See, e.g., State v. Ball, 824 So. 2d 1089, 1110 (La. 2002); Burkett v. State, 179 S.W.3d 18, 31 (Tex. App. 2005). Neither party has cited to us decisions from the federal civilian courts that would indicate a generally applicable standard for considering this question in the trial of criminal cases in federal district courts. Cf.

Article 36(a), UCMJ, 10 U.S.C. § 836(a) (2000) (referring to "the principles of law and the rules of evidence generally recognized in the trial of criminal cases in the United States district courts" as the foundation for similar rules in the military justice system).

In short, at the time of trial, the case law from this Court did not preclude trial counsel's questions, generally applicable federal criminal law did not provide guidance on point, and only a handful of state cases addressed this matter. In that context, we conclude that Appellant has not carried his burden of demonstrating that the military judge committed an error that was "plain" or "obvious" in permitting the trial counsel to ask the hypothetical questions at issue in the present case.

We emphasize that the case before us involves the scope of permissible questions on voir dire, not the ruling of a military judge on a challenge for cause. If, for example, a question prompted a panel member to make a statement demonstrating prejudgment of the case, that would present a question regarding a challenge for cause. See R.C.M. 912(f)(1)(N). In the present case, however, defense counsel not only permitted the trial counsel's questions to proceed without objection, but also offered no challenge to any of the members who rendered the findings or sentence. On appeal, Appellant has not contended

that trial defense counsel erred in not offering a challenge for cause or that the military judge erred in permitting any member to sit on the panel.

To the extent that Appellant asks us to rule that the questions at issue were impermissible, we are presented with a question that not only is a matter of first impression with this Court, but also a matter on which there is little guidance from other federal courts. Particularly in light of the fact-intensive, case-specific nature of the issue raised by Appellant, it is an issue that would benefit from a well-articulated objection at trial, as well as findings of fact and conclusions of law by the military judge. Absent the development of such a record in the case before us, we decline to conclude that the military judge committed plain error.

## III. DECISION

The decision of the United States Navy-Marine Corps Court of Criminal Appeals is affirmed.

United States v. Nieto Jr., No. 07-0495/MC

STUCKY, Judge (concurring):

Trial counsel posed voir dire questions using facts from Appellant's case to obtain from court members commitments that they would view those facts in a particular way. While I agree with the majority's disposition of the case, I write separately to emphasize that actions like those of the trial counsel are disfavored, if not necessarily outright error. As we cautioned practitioners in United States v. Tippit:

> [I]t is appropriate to allow considerable leeway to
> counsel in the voir dire examination of court members
> as they seek to ascertain whether a challenge for
> cause should be asserted. However, latitude for
> counsel in propounding questions to court members
> about their reactions to hypothetical situations
> should not become an invitation to reversible error.

9 M.J. 106, 107-08 (C.M.A. 1980) (per curiam). More recently, we sympathized "'with the plight of court-martial members who on voir dire are asked hypothetical questions.'" United States v. Rolle, 53 M.J. 187, 191 (C.A.A.F. 2000) (quoting United States v. Heriot, 21 M.J. 11, 13 (C.M.A. 1985)).

This Court has long held it is error to pose hypothetical questions involving case-specific facts to seek a commitment regarding a punitive discharge. United States v. Reynolds, 23 M.J. 292, 294 (C.M.A. 1987). As we said in Reynolds, "[n]either the Government nor the accused is entitled to a commitment from the triers of fact about what they will ultimately do." Id. (holding that hypothetical voir dire questions asking members to

commit themselves to an appropriate sentence was error); accord

Rolle, 53 M.J. at 191; United States v. Rockwood, 52 M.J. 98,

106 (C.A.A.F. 1999); United States v. Small, 21 M.J. 218, 219

(C.M.A. 1986).  Although the questions posed in Appellant's case

did not seek commitment on a particular sentencing element, they

did seek commitment on how the member questioned would view

certain evidence.

Although I would find error in this case, I agree with the

majority that the error is not plain or obvious.  See United

States v. Magyari, 63 M.J. 123, 125 (C.A.A.F. 2006) (holding

that there is no plain error unless an appellant can show the

error was plain or obvious and that the error materially

prejudiced the appellant's substantial rights).  While this

Court has addressed the validity of voir dire questions seeking

commitment on an appropriate sentence, this Court has not

clearly addressed whether it is error to seek commitment on a

disputed factual matter.[1]  I agree with the majority that the

---

[1] One possible exception is United States v. Carver, 6 C.M.A.
258, 19 C.M.R. 384 (1955).  In Carver, the law officer released
a member after the member apparently became disturbed by trial
counsel's questioning of a defense expert witness.  6 C.M.A. at
264, 19 C.M.R. at 390.  Trial counsel was allowed to voir dire
the member mid-trial.  Id.  We held it was error to permit
questions designed to discover the weight the member would give
to various expert witnesses as the questions asked for a
commitment on how he would decide the issues before hearing
testimony or receiving evidence.  6 C.M.A. at 267, 19 C.M.R. at
392.  Given the unusual facts of this case, I do not see it as
clearing the murky waters in this area.

United States v. Nieto Jr., No. 07-0495/MC

decisions discussing this issue, in both this Court and in other federal courts, do not provide clear guidance.  Error cannot be plain or obvious if the law is unsettled on the issue at the time of trial and remains so on appeal.  United States v. Garcia-Rodriguez, 415 F.3d 452, 455-56 (5th Cir. 2005); United States v. Diaz, 285 F.3d 92, 96 (1st Cir. 2002).  Nor is an error "plain" if Appellant's theory requires "the extension of precedent."  United States v. Hull, 160 F.3d 265, 272 (5th Cir. 1998).

Thus, I would find the use of voir dire questions asking for a commitment using case-specific facts to formulate hypothetical questions was error in this case, but the error was not so plain or obvious that it relieves Appellant of his failure to preserve the issue on appeal.  For this reason, I concur in affirming the decision of the United States Navy-Marine Corps Court of Criminal Appeals.

BAKER, Judge, with whom ERDMANN, Judge, joins (concurring in the result):

The Court's opinion concludes that Appellant has not met his burden of demonstrating plain error.  I agree, albeit for a different reason.  As a separate matter, I believe this Court should, in light of this case, offer further guidance to the field distinguishing between proper and improper hypothetical and commitment questions during voir dire, although for reasons stated below this is admittedly difficult to do.

The Court discusses two tracks in state case law on the subject of hypothetical questions during voir dire.  The first track prohibits hypothetical questions intended to induce juror commitments on facts that are verdict dispositive.  The second track addresses questions intended to induce juror commitments on specific facts.

It is not clear how different the two tracks really are.  One problem in this case is that under either track the questions asked by trial counsel would appear to be impermissible efforts to preview the members' reaction to evidence yet to come.  Trial counsel asked prospective members whether a technical error in the collection process would per se invalidate a urinalysis.  This is a general question intended to discern potential bias and fixed and inflexible views regarding urinalysis processing generally.  However, with some members

trial counsel went further.  In the case of Chief Warrant

Officer 2 (CWO2) C, for example, he asked:

> And so it wouldn't necessarily be per se invalid if the
> coordinator didn't put his initials on the bottle let's
> say.  If it came back to the coordinator the accused
> brought it back to the table, but the coordinator didn't
> put his initials on the bottle before it went back into the
> box.  Would that be a violation that you couldn't overlook?

Whether viewed as hypothetical, commitment, or case specific in

nature, trial counsel's questions about urinalysis processing

accomplished the same objective, because Appellant's case hinged

on any doubts he might generate regarding the urinalysis

procedures, and in particular with regard to the labeling of the

bottle.[1]  Thus, on this point, I think Appellant has the better

argument.  However, such insight comes from reading the record

backward, a benefit the military judge did not have at the time.

---

[1] Trial counsel's "military character" question put to all the
potential members was also problematic:

> Does any member believe that evidence [of] the accused['s]
> good military character by itself is sufficient to out
> weigh [sic] other evidence of the accused's guilt?

> Negative response from the members.

This question asked the members to commit to an incorrect
statement of the law pertaining to the reasonable doubt
standard, which was arguably plain and obvious at the time.
However, the military judge later instructed the members that
evidence of good military character and character for
truthfulness could be enough to create reasonable doubt -- and
we assume that the members followed the military judge's
instructions.  Therefore, if there was error in not immediately
addressing the question posed, it was not prejudicial.

I would not find plain error in this case because at the time the questions were asked, the military judge did not have the benefit of knowing how the evidence yet to be introduced would relate to the theories of the parties. Therefore, while it may be obvious in retrospect to see how the questions involved were more than hypothetical and did more than test for bias, I do not find error in the military judge not seeing this at the time the questions were asked. Where the questions concerned might reasonably have been intended to test for bias as well as potentially to test the real facts in issue on the potential members, the military judge did not have a sua sponte duty to look behind the questions asked.

In the voir dire context, it is the counsel who will have the better feel for the coming evidence rather than the military judge. Therefore, it is generally counsel's objection and not the military judge's speculation that is critical in detecting the improper question. Counsel, rather than the military judge, will have a better feel during voir dire as to whether hypothetical questions are truly hypothetical and intended to test for bias, or whether they are in reality (and in disguise) commitment questions intended to preview attitudes toward specific evidence. While not all commitment questions are improper, some questions surely are. Therefore, appellate courts might express concern but it is problematic to draw

bright line rules.  The same is true of hypotheticals.
Hypotheticals are surely useful in testing for and detecting
bias.  However, they can also be used to preview case specific
facts and to warm up the jury.

For these reasons, military judges must have broad
discretion in overseeing voir dire questioning.  This
discretion, however, should extend to looking behind the
questions asked, especially where questions suggest an effort at
securing commitments to case related "hypothetical" facts.
Thus, in instances where a military judge can reasonably foresee
the direction of the case, hypothetical factual questions like
those presented in this case might indeed present obvious
attempts to commit the members.  In such cases, a military judge
would err in not testing the basis for such questions.